### 1263.   BRANCH *v.* THE STATE.

1. In a trial for murder, where all of the evidence in behalf of the State, both direct and circumstantial, presents no other view than that the defendant is guilty of murder, and the statement of the defendant, if true, unequivocally shows the killing to have been justifiable, it is error for the court to give to the jury any instructions on the law of voluntary manslaughter. And where, in any view of the case, only the two conflicting theories of murder and justifiable homicide are presented, a verdict finding a defendant guilty of voluntary manslaughter should be set aside.
2. While it is proper in some cases to instruct the jury that when a homicide is proved the law presumes malice, and that it is incumbent on the prisoner to rebut this presumption, still the jury should not be told that "the burden of showing justification or mitigation is upon the defendant," without qualifying this statement by the further instruction that the burden is successfully carried if the circumstances of justification or mitigation arise out of the evidence introduced against him.
3. It is error for the judge, in his charge, to suggest to the jury a theory not supported by the evidence, and to give in charge law not applicable to the testimony.

Indictment for murder, from Miller superior court—Judge Worrill. June 16, 1908.

Submitted October 5, 1908.—Decided February 16, 1909.

*William I. Geer,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold, J. B. Ridley,* contra.

RUSSELL, J. The defendant was convicted of manslaughter. After a careful consideration of the brief of the evidence, we are satisfied that the exceptions to the judge's charge are well taken, and that the defendant should have been granted a new trial. The evidence in behalf of the State authorized a verdict of guilty of murder, and, under the defendant's statement, if it is true, there could be no question that he was justifiable. The statement is very brief, but it is not tinctured with any admission which could have given an excuse to the jury to find the defendant guilty of any offense, by believing a part and rejecting another part of the statement. In other words, the evidence of the witnesses who were present, both as to the direct facts connected with the shooting of the deceased and as to every circumstance surrounding the killing, makes a case of deliberate and cold-blooded murder. Evidence of dying declarations was introduced, and the statement of the deceased is that the defendant killed him for nothing. The evidence is not sufficient to raise even a suspicion that there was any sudden quarrel preceding the killing, that any assault was attempted by the deceased on the defendant, or that the killing was due to a sudden heat of passion which could be attributed to any other cause than the cause which is assigned by the defendant as his reason for the killing. And even if the cause of the killing, as stated by the defendant,—that he came suddenly into his home and found the deceased in the very act of sexual intercourse with his wife,—caused passion, the law justifies the killing, if the facts were as stated by the defendant, regardless of the heat of anger which may have accompanied the act. Under such circumstances as stated by the defendant, if anger exists, it, like the killing, is justifiable, and, unlike the heat of passion which may reduce the killing to manslaughter, is not to be considered in mitigation or for any other purpose, if the killing was justifiable in the protection of his home. The witnesses for the State who were near enough to hear a conversation between the deceased and the defendant, if any was engaged in, testify that there was none. The witness who was on the wagon with the deceased and stopped in front of the defendant's house testified not only that there was no conversation after the defendant entered his house, but that the first he knew of the defendant's approach was when he turned

around on the seat of the wagon and saw the defendant coming in a run, with his pistol in his hand; that the defendant ran into the house, and through the door in the partition between the two rooms, and that immediately he heard two shots and saw the deceased fall out of one window and the defendant's wife out of another. The defendant ran out of the house and fired two more shots at the deceased in the back yard. There is nothing in this testimony, taken in connection with the defendant's statement, to present any theory of voluntary manslaughter; and if his statement be entirely disregarded and the testimony be considered in connection with the dying statement of the deceased, that he was killed for nothing, the law of voluntary manslaughter is not applicable to the case. We think, therefore, that the learned judge erred in instructing the jury with reference to the law of voluntary manslaughter, for in no view of the case is the subject of voluntary manslaughter involved. The suppositions or conclusions which the judge drew from the testimony, and upon which he presented other and further instructions on the subject of voluntary manslaughter, were not authorized by the evidence; because they rested upon theories as to what the defendant did or did not see when he entered his house, which were not based upon any evidence presented by the State, and which were wholly in conflict with what the defendant stated he saw. In fact, the only reasonable supposition which could arise from the evidence of the State, if the defendant's statement is false, is that the defendant shot the deceased for nothing, and under the evidence would be guilty of murder, as is very clearly stated by the judge in his charge.

The remaining exceptions are sufficiently dealt with in the headnotes. While we think that the charge of the judge upon the presumption arising upon the proof of the killing, and the burden thereby placed upon the defendant to relieve himself from that presumption, should in every case be qualified by instruction that the circumstances to rebut that presumption may arise from evidence introduced by the State itself (*Green* v. *State*, 124 *Ga.* 343, 52 S. E. 431), still we perhaps would not reverse the judgment of the lower court upon that ground alone. But the absolute absence of any evidence or of any admission in the statement of the defendant which can justify the verdict of voluntary manslaughter requires the grant of a new trial.       *Judgment reversed.*