## CHAPMAN v. THE STATE.

1. The evidence authorized the charge on the subject of involuntary manslaughter in the commission of an unlawful act, and was sufficient to sustain the verdict finding the defendant guilty of that grade of homicide.

2. Where a defendant charged with murder is convicted of involuntary manslaughter in the commission of an unlawful act, a new trial will not be granted because the court charged the law of voluntary manslaughter, even if the last-named grade of homicide should be inapplicable to the facts of the case.

Submitted July 19, — Decided August 9, 1904.

Indictment for murder.　Before Judge Felton.　Bibb superior court.　June 7, 1904.

*John R. Cooper*, for plaintiff in error.

*William Brunson, solicitor-general*, contra.

EVANS, J.　Sam Chapman was indicted for the murder of James Brown, and the jury found him guilty of involuntary manslaughter in the commission of an unlawful act.　He made a motion for a new trial, which was overruled, and he excepts to the refusal of the court to grant a new trial.　The motion for a new trial was predicated upon the grounds that the verdict was contrary to law and the evidence, and that the court erred in giving in charge the law of voluntary and involuntary manslaughter. No complaint is made that the charges on the subject of manslaughter incorrectly stated the law ; the exception is that neither grade of manslaughter was involved in the case.　Inasmuch as the defendant was convicted of involuntary manslaughter in the commission of an unlawful act, he could not have been prejudiced by the charge on the subject of voluntary manslaughter.　The verdict rendered was a practical acquittal of the defendant of the higher grades of homicide, and any possible error which may have been committed by the judge in instructing the jury on the subject of voluntary manslaughter could not be harmful to the accused.　See *McRae* v. *State*, 52 *Ga.* 290.　Therefore, in the present state of the record, it is immaterial whether the facts authorized a charge on the subject of voluntary manslaughter ; the defendant's guilt or innocence of the grade of homicide found by the jury was altogether unaffected by giving the law of voluntary manslaughter in charge to the jury.　An analysis of the evidence discloses that the deceased and defendant were brothers-

in-law, having married sisters.    Late in the afternoon of the day alleged in the indictment, they were quarreling on the streets of Macon.    The quarrel ended, and, as defendant announced his intention of going home, deceased asked that he might ride home with him in his wagon.    The defendant agreed to this, and the two drove off in the wagon.    They stopped at a store where the deceased said he wished to buy some cartridges.    The deceased did not have a pistol.    Just outside of the city limits, a witness saw the defendant and the deceased engaged in a struggle in the wagon, apparently fighting, and both fell out of the wagon.    Immediately after the parties fell from the wagon, the deceased began to run ; and when he had proceeded about ten yards, a witness for the State heard a lick, and simultaneously the deceased fell to the ground.    It was too dark for the witness to see how or in what way the deceased was struck.    The witness went to where the deceased fell, and found him in an unconscious condition.    The defendant got in his wagon and drove off.    A small knife, half opened, was found near where the deceased fell.    The deceased was removed to a hospital, where he died without regaining consciousness.    The cause of his death was a wound on the left side of the head, indenting the skull and apparently inflicted with some blunt instrument.    The defendant in his statement admitted the quarrel with deceased in the city, but said they had settled their differences and, when defendant started home, the deceased asked permission to ride home with him in his wagon.    He assented to this request.    On their way home the deceased was laughing and talking, and threw one arm around the neck of the defendant and caught the lines.    The deceased had an open knife in his hand and pricked the defendant's hand with it.    The defendant then caught the deceased by the hand and, in the scuffle, the wagon seat was overturned and both fell out of the wagon.    Deceased made an attempt to cut defendant, and did cut his coat.    Then defendant ran, pursued by the deceased, who was attempting to cut him.    He hastily picked up a brick and threw it at the deceased, not intending to kill, but to prevent the deceased from cutting him.

The defendant offered evidence as to his good character, and also introduced a witness who testified that one of the men in the wagon seemed drunk, but witness was unable to say which one

was drunk.    The eye-witness did not see the defendant pick up
the brick with which he struck the deceased.    But in his state-
ment the defendant says he hastily picked up the brick and
threw it at the deceased.    The evidence is silent as to the size
and weight of the brick and as to whether it was a deadly
weapon or was used in such a manner as that the ordinary conse-
quences of the act would have produced death.    A full descrip-
tion of the wound is not given; the evidence discloses only
that the skull was indented as if the wound was inflicted by
some blunt instrument.    The defendant disclaimed any intention
to take the life of the deceased.    If the State's evidence be true
that, at the time defendant threw the brick, the deceased was
fleeing from him, then it was an unlawful act.    And if the brick
was hastily picked up and thrown with no intention of killing
the deceased, and the evidence failed to disclose that the brick
was either a deadly weapon or was thrown in such a manner as
ordinarily would have produced death, the homicide would be
involuntary.    Whenever the evidence raises a doubt whether the
crime be murder or manslaughter, voluntary or involuntary, the
court should instruct the jury upon these grades of homicide, as
well as murder.    *Jackson* v. *State*, 75 *Ga.* 478.    The evidence
not only authorized the charge upon the subject of involuntary
manslaughter in the commission of an unlawful act, but was
sufficient to sustain the finding of the jury that the defendant
was guilty of this grade of homicide.

*Judgment affirmed.    All the Justices concur.*