## JORDAN v. THE STATE.

The evidence amply warranted a finding that the accused was guilty of involuntary manslaughter in the commission of an unlawful act; but as it did not appear beyond a reasonable doubt that there was any intention to kill, or that the killing was done with a weapon likely to produce death, a verdict finding the accused guilty of murder should have been set aside.

Argued January 15,—Decided February 15, 1906.

Indictment for murder. Before Judge Reagan. Spalding superior court. November 11, 1905.

Henry Jordan was convicted under an indictment charging him with murder, and assigns error upon the refusal of the judge to grant him a new trial. Carrie Varner, a witness for the State, testified as follows: Henry Jordan and Mattie Jordan were at the home of the witness, and were talking about going to Fred Connor's, Henry told her she was not going without putting on her shoes. Mattie Jordan said, one of her feet was swollen, and it hurt her to wear shoes, and she was going anyway. Henry was sitting in the door, trimming a piece of plank. She started off, and he threw down the plank and started after her. She looked back, saw him coming, and started to run. Henry threw the rock. He got it from under a hickory tree while following her. Witness could not tell exactly what size it was; it looked as if it might be as big as her fist. The rock hit Mattie Jordan, she fell, and when witness reached her she was dead. Dr. W. H. Dorsey testified, that on post-mortem examination he found a bruise at the top of the vertebral column of the deceased, the third vertebra being broken. This could have been done by a rock hitting the deceased in the back of the neck. Breaking her neck would cause her death, but he could not tell what broke her neck. Striking it with a rock would produce the bruise he found. He found no abrasion of the skin. Whether a rock of sufficient size to break the neck would make an abrasion of the skin would depend upon the character of the rock. A smooth rock would not necessarily make an abrasion; a rough one would. It is possible that the neck might have been broken by the fall. A person falling in the position in which the deceased is said to have fallen and broken her neck, it would be almost impossible for her to cry out. A person hit from behind might go for some distance and fall without crying out. A person throwing a

rock of the size as testified to by Carrie Varner might produce a wound on the neck of the character found on deceased. The witness looked thoroughly about the place where the woman was lying, and found no rock. There was a stump standing up in the ground near where deceased had fallen. Witness was shown a rock afterwards which was said to have caused the wound, but he did not see it at the place of the killing. The accused, in his statement, denied that he killed his wife, saying that he ran after her and she fell. He also asserted that they had had no trouble, and they had always gotten along well together. There was rebuttal evidence for the State that the accused and his wife had been seen quarrelling at different times, but no evidence that he had ever made any threats to kill her or harm her in any way. One witness testified that the rock, as described by Carrie Varner, was, in his opinion, likely to produce death, and that a red, smooth rock was found near the place of the killing, a little larger than a man's fist. The witness did not state that he found the rock, but that it was found by one Jake Barrett, who seems not to have been called as a witness.

*J. J. Flynt* and *T. W. Thurman,* for plaintiff in error.

*John C. Hart, attorney-general,* and *O. H. B. Bloodworth, solicitor-general,* contra.

COBB, P. J. (After stating the foregoing facts.) Even if it can not be said that the testimony, taken as a whole, establishes that there was no intention to kill, it certainly can be, with confidence, asserted that it does not appear beyond a reasonable doubt that there was such an intention. If there was no intent to kill, the accused was not guilty of murder, unless the killing happened in the commission of an unlawful act which in its consequences naturally tended to destroy the life of a human being. Penal Code, §66. The throwing of the rock was an assault, and was, of course, an unlawful act. In determining whether the killing happened as the result of an act naturally tending in its consequences to destroy the life of a human being, much will depend upon the size and character of the rock. On this vital matter the evidence, at its best, is vague, uncertain, and unsatisfactory. The principal witness for the State testified that the rock "looked like it might be as big as my fist. I don't know whether it was or not." Where all the circumstances are such as to preclude the idea of deliberation,

and where the weapon used is one caught up hastily, a killing re-sulting from the use of such a weapon under such circumstances is not generally murder, but only involuntary manslaughter. In *Ray's* case, 15 *Ga.* 223, it was said that the fact that a person had accidentally and hastily taken up a board with which he had inflicted wounds which produced death, and had not provided the same, was a circumstance which did not favor the presumption that malice will be implied because the weapon was of a character likely to produce death. In *Henry's* case, 33 *Ga.* 441, the accused was a slave and a blacksmith, who intended to whip a striker, also a slave, striking him over the head with an axe helve and killing him, but with no intention to bring about that result; and there being no evidence from which such intention could be inferred because the helve may have been a weapon likely to produce death, a verdict of guilty of murder was set aside on the ground that the evidence did not warrant such a finding. See also *Crawford's* case, 90 *Ga.* 709; *Taylor's* case, 108 *Ga.* 390.

The accused, according to the evidence of the State, was clearly guilty of involuntary manslaughter in the commission of an unlawful act, but the evidence did not authorize a finding that he was guilty of murder. It did not appear beyond a reasonable doubt that there was any intention to kill, nor did it appear beyond a reasonable doubt that the weapon used was one likely to produce death.

*Judgment reversed. All the Justices concur, except Beck, J., who was disqualified.*