126　633
f129　295
130　364

## DORSEY *v.* THE STATE.

Under one phase of the testimony the law of involuntary manslaughter in the commission of an unlawful act was involved in this case, and it was erroneous for the judge to fail to instruct the jury on this subject.

Argued October 18,—Decided November 9, 1906.

Indictment for murder. Before Judge Kimsev. Hall superior court. September 4, 1905.

The accused was indicted for murder and convicted of voluntary manslaughter. He assigns error upon the refusal of the judge to grant a new trial. The transaction resulting in the death of the deceased, as shown by the evidence, was in substance as follows: The accused and the deceased, on the night of the killing, were both drinking, and it appears that they had some controversy about taking a drink of whisky. This quarrel was trivial in itself, but in order to avoid any further trouble, Keesee, a witness, carried the accused across the street and endeavored to persuade him to let the matter drop. In conversation with Keesee the accused said that he intended to kill the deceased unless he went back to town, and this threat was made more than once. The accused and the deceased met again, the accused this time being accompanied by his kinsman, Chunk Dorsey; and the three, with Keesee, went up the street. Trouble again arose between the accused and the deceased, and also between the deceased and Chunk Dorsey, but this was quieted. Keesee, believing that no further trouble was to be anticipated, left the deceased and the two Dorseys and returned to town. The accused had with him a billiard cue, cut down so that it was used as a walking stick. The evidence does not disclose the exact character of this stick, but the judge, in a note to the motion for a new trial, says that the stick was introduced in evidence and identified as the one used, and that it was the large end of a billiard cue about four feet long and an inch or more in diameter at the larger end. The deceased used an insulting epithet to the accused, and menaced him by drawing his hands from his pockets and hold-

ing them in a fighting attitude. It does not appear that the deceased had any weapon. The accused thereupon struck the deceased with the billiard cue and knocked him down. The deceased arose and struck the accused several licks, apparently with his fists, and the accused again struck the deceased with the billiard cue, knocked him down, and rendered him unconscious. From the effect of these blows the deceased died the following day.

*Thompson & Bell* and *H. H. Dean,* for plaintiff in error.

*W. A. Charters, solicitor-general,* and *F. M. Johnson,* contra.

COBB, P. J. (After stating the foregoing facts.) The judge instructed the jury fully on the law of murder, voluntary manslaughter, and homicide resulting from reasonable fears by the slayer, as well as homicide resulting from mutual combat. The charge contained no reference whatever to the law of involuntary manslaughter. One of the assignments of error is based upon the failure of the judge to instruct the jury upon this subject, and this assignment is strenuously insisted upon by counsel. The weapon used was before the jury, and it was for them to determine, by an inspection of the weapon, whether it was one likely to produce death. The jury should have been fully instructed as to their duties in reference to this question; and the law applicable to any phase of the case resulting from their finding as to the character of the weapon should have been embraced in the instructions of the judge. If they found that the weapon used was one likely to produce death, in the manner in which it was used, then, if the accused was not justified under some rule of law in using the weapon in the manner and at the time at which he used it, he would be guilty of murder or of voluntary manslaughter, according to whether they believed that the blow was struck from malice, or as a result of passion not brought about by words alone. If the jury should find that the weapon was one which would not ordinarily produce death, and therefore was not a deadly weapon, and the circumstances demonstrated to the satisfaction of the jury that there was no intention to kill, then, even though the blow was not justified, the accused would be guilty only of the offense of involuntary manslaughter; the grade of which he would be convicted to be determined by whether the blow was inflicted as a result of an unlawful act, or whether, under the circumstances, he was justified in striking a blow, but in administering it did not use due care and circum-

spection. Under one view of the evidence the law of involuntary manslaughter in the commission of an unlawful act was certainly involved. It is not altogether clear that the lower grade of involuntary manslaughter was really involved in the case. The failure of the judge to instruct the jury upon the higher grade of involuntary manslaughter was such an error as constrains us to reverse the judgment refusing a new trial. See *Taylor* v. *State*, 108 *Ga.* 389; *Farmer* v. *State*, 112 *Ga.* 80; *Chapman* v. *State*, 120 *Ga.* 855; *Jordan* v. *State*, 124 *Ga.* 780. We do not deem it necessary to discuss at length the other assignments of error, for none of them alone would have required a reversal of the judgment, and any error that may have been committed in the instructions or in the admission of evidence will no doubt be corrected on another trial.

*Judgment reversed. All the Justices concur.*