458.   DORSEY *v.* THE STATE.

1. The law of involuntary manslaughter, as applicable to the evidence, was fully and properly presented to the jury by the charge of the court.
2. A request to charge the jury that it is their duty, where threats, if proved, are susceptible of two constructions, to give the defendant the benefit of the innocent construction, was properly refused. The absence of the word "equally" renders the request one not proper to be granted.
3. To instruct the jury that threats (in any case) "are of very little importance as evidence in guiding the jury" would be a violation of the Civil Code, § 4334. The jury, and not the judge, must weigh the evidence.

4. Extracts from a charge, upon which error is assigned, must be considered and construed in connection with the charge taken as a whole. It is impossible for a trial judge to repeat, in every connection, all of the principles involved in the case. Nor is he required to indulge in such repetition. Where the statements upon different legal propositions are carefully distinguished and cautiously contrasted with each other, and so clearly that they can neither mislead nor confuse, the ordinary intelligence of the jury can safely be relied upon to render frequent repetition of the same principle of law unnecessary and useless.

5-6. The judgment of the trial court, refusing a new trial, is not, for any reason assigned, erroneous.

Conviction of manslaughter, from Hall superior court—Judge Kimsey. April 9, 1907.

Argued May 27—Decided June 26, 1907.

H. H. Dean, Thompson & Bell, for plaintiff in error.

W. A. Charters, solicitor-general, F. M. Johnson, contra.

RUSSELL, J. Dorsey was indicted for murder and convicted of voluntary manslaughter. His motion for a new trial was refused, and he excepts to that judgment. The evidence showed that he and the deceased and several others had been drinking together at intervals during the afternoon and evening. As frequently occurs on such occasions, there were several trivial quarrels in which the deceased participated. The defendant finally started to a house where he did not wish others to accompany him, and requested the deceased not to do so. This request and some words over a drink of whisky were followed by the deceased finally getting in front of the defendant, calling him vile names, and making a motion as if to strike him. There was no evidence that the deceased had any weapon, though the defendant claimed in his statement that he had either a knife or knucks. The defendant had in his hand a billiard cue, which had been cut off so as to be used as a walking stick, and with this he struck the deceased twice, once in the mouth and once on the side of the head, knocking him down each time. He then proceeded on his journey. The deceased went back to his home, procured medical attention, and died in two days. There was a former trial of this case, which is reported in 126 Ga. 633, 55 S. E. 479. In addition to the evidence there reported, there was testimony on the present trial that the deceased threatened to kill the defendant if the defendant did not kill him, and there was also evidence on the part of the State, not adduced on the former

trial, that the weapon used was a deadly weapon. The case was remanded by the Supreme Court for a new trial, upon the sole ground that the judge failed to instruct the jury as to the law of involuntary manslaughter, the Supreme Court holding, that "if the jury should find that the weapon was one which would not ordinarily produce death, and was therefore not a deadly weapon, and the circumstances demonstrated to the satisfaction of the jury that there was no intention to kill, then, even though the blow was not justified, the accused would be guilty only of the offense of involuntary manslaughter; the grade of which he would be convicted to be determined by whether the blow was inflicted as a result of an unlawful act, or whether, under the circumstances, he was justified in striking a blow, but in administering it did not use due care and circumspection." This error of the trial court was corrected on the last trial, and both grades of involuntary manslaughter were given in charge to the jury; the jury, as on the previous trial, returning a verdict finding the defendant guilty of voluntary manslaughter. The case is now brought to this court for review upon several assignments of error in addition to the general grounds.

The first of these grounds is that the court erred in refusing a written request to charge that while provocation by words, threats, menaces, or contemptuous gestures would not be sufficient to reduce the homicide below the grade of murder, when the killing is done not on account of any fear in the mind of the slayer, but solely for the purpose of resisting the provocation, nevertheless threats accompanied by menaces may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger, or that a felony is about to be perpetrated upon him; and if the defendant acted under the fears of a reasonable man that the deceased intended by violence or surprise to commit a felony upon him, the defendant would be justified. This request was in the language of the decision of the Supreme Court in *Cumming* v. *State,* 99 *Ga.* 662, 27 S. E. 177, except that in the written request presented, the word "resisting" was used instead of "resenting." It devolved upon the defendant to present a correct request, and even though the error may be only typographical, yet as it does not correctly state the law, it was not incumbent upon the court to present it to the jury. The plaintiff in error insists, however, that the principle

embraced in the request should have been given in charge to the jury. We think the jury should have been and were instructed on the proposition for which the plaintiff in error contends. The trial judge, upon this subject, instructed the jury as follows: "You know I charged you a while ago, gentlemen of the jury, that in order to reduce a homicide from murder to voluntary manslaughter, that is where a human being is killed under a great heat of passion, that words, contemptuous gestures, or things of that sort, opprobrious epithets, should not be sufficient provocation to reduce the killing from murder to voluntary manslaughter. Under the head of reasonable fears in case of justifiable homicide,—under this head of justifiable homicide,—where the defendant is without fault in bringing on the difficulty, acting under reasonable fears, the law provides (it being purely a question of fact as to whether the attendant circumstances justified a reasonable fear upon the part of the accused that such injury was about to be committed upon his person) that that question is one exclusively for the jury. There are so many conditions under which grounds for reasonable fear could arise that the legislature has not undertaken to say that any given state of facts or circumstances shall or shall not be sufficient to constitute grounds of reasonable fear, but has left the matter open for determination by the jury, in each instance, without further limitation than that the circumstances must be sufficient to excite the fears of a reasonable man that some one or more of the offenses named in the Penal Code were about to be committed, or that his life was in imminent danger; thus leaving it to the jury, after all, to pass upon the sufficiency of the circumstances for that purpose. And the jury would have the right to consider the conduct of the defendant and the conduct of the deceased,—the words that were used, if there were any used; the jury would consider it all, what words were passed by one to the other; and it is for the jury to say whether or not the circumstances were sufficient to excite the fears of a reasonable man. If the circumstances are sufficient to excite the fears of a reasonable man, the killing will be attributed to them, in the absence of proof to the contrary, and also that the accused acted under those fears and not in a spirit of revenge. The sufficiency of the fears is a question for the jury always. The defendant will be justifiable if there be a reasonable doubt as to whether he acted under such fears, or had

reason to feel that it was necessary to kill in order to save his own life or to prevent a felony from being committed upon his person." We think these instructions as fully put before the jury the principle that words, though not amounting to actual assault, may in some instances be sufficient to arouse the fears of a reasonable man, as did the request, and was more apt for the purpose than the charge requested, in that it called the attention of the jury to the circumstances creating the "some instances" referred to by the Supreme Court. A court of review frequently uses, and can properly use, language which would be highly improper or confusing to the jury if given in charge by a trial judge. To have charged the jury that "in some instances" threats accompanied by menaces might be sufficient to arouse the fears of a reasonable man, without instructing the jury as to the nature of those instances, would have been erroneous; because the jury would have had no information as to how they were to determine from the evidence whether such an instance was presented in the case at bar. The trial judge gave them a correct rule when he said that the jury could consider the conduct of the parties, the words that were passed from one to the other, etc., consider it all, and say whether or not the circumstances were sufficient to excite the fears of a reasonable man. And the charge we have quoted above, calling especial attention to his previous charge on section 65 of the Penal Code (when instructing them as to the law of voluntary manslaughter); and applying by contrast the use of opprobrious words to the doctrine of reasonable fears (should the jury believe the defendant acted under such fears), rendered it impossible that the jury could either have been confused or misled, or the defendant's rights prejudiced.

2. The plaintiff in error assigns error upon the refusal of a request to charge as follows: "I charge you further, that if there is any proof of threats by the defendant, introduced before you, and such threats are susceptible to two constructions, it is the duty of the jury to give the defendant the benefit of the innocent construction, if they can, rather than the guilty construction." This not being a correct statement of the law, the court was not required to present it to the jury. The rule is that if threats are *equally* susceptible of two constructions, it is the duty of the jury, if they can, to prefer the innocent construction.

3. To have given the charge the refusal of which is excepted to in the third ground of the motion would have been a manifest violation of the provisions of the Civil Code, §4334. The charge requested was in these words: "I charge you that mere idle threats, without any intention of carrying the same into execution, and without any effort to do so, are of very little importance as evidence in guiding the jury in the deliberation of the case."

4. Exception is taken to the following charge of the court: "I charge you, gentlemen of the jury, if two men suddenly fall out and fight, and there is a mutual intent to fight upon the part of the men, and there is great heat of passion and they do fight, although there might not be but one blow stricken and that blow is the fatal blow, if there is mutual intent to fight, and they do fight, and one is killed as a result of it—I charge you that such killing would be voluntary manslaughter, unless justified." The complaint made of the charge is that it took from the jury the consideration of the law of involuntary manslaughter, and also the consideration of the question as to whether such fight was with or without a weapon, or with or without intent to kill, or with a weapon likely to produce death when used in the manner in which it was used, or without regard to whether there was any intention to kill on the part of defendant, and because it required the jury to find the defendant guilty of voluntary manslaughter. It is insisted further that the charge was error because contrary to the decision of the Supreme Court in the following language: "If the jury should find that the weapon was one which would not ordinarily produce death, and therefore was not a deadly weapon, and the circumstances demonstrated to the satisfaction of the jury that there was no intention to kill, then, even though the blow was not justified, the accused would be guilty only of the offense of involuntary manslaughter; the grade of which he would be convicted to be determined by whether the blow was inflicted as a result of an unlawful act, or whether, under the circumstances, he was justified in striking the blow, but in administering it did not use due care and circumspection." It is further insisted that it was erroneous to instruct the jury that such killing would be voluntary manslaughter unless justified. The extract from the charge to which exception is taken, if considered alone, or if it had been delivered as a part of the instruction with reference to involuntary

manslaughter, or if there had been an absence of other and correct instructions upon the subject of involuntary manslaughter, would have been error. But it must be borne in mind that the language quoted in this exception is only a disconnected fragment from the charge of the court upon the subject of voluntary manslaughter, in which the court more than once called attention to the fact that it was only to be considered as applicable to that particular grade of homicide. The judge first instructed the jury as to the law of murder; then the application of the law of voluntary manslaughter was discussed; then involuntary manslaughter; and finally justifiable homicide; and as the judge would pass from the one to the other he very carefully and cautiously called the attention of the jury thereto, and instructed them so that they could not be confused or misled. Considered with what preceded and followed the extract upon which error is assigned, there is no ground for complaint; for it is impossible for the trial judge to repeat in every connection all of the principles and limitations involved in the entire case. Nor is he required to do so. Some reliance must be had on the ordinary intelligence of the jury to render repetition unnecessary and useless. In other portions of the charge, after clearly and specifically referring to the charge here complained of and distinguishing the application of the two principles, according as the jury might find the truth, the court fully instructed the jury that they were to consider the nature and character of the weapon and the intention with which it was used, charging them as follows: "I charge you that if you believe, from the evidence, that the weapon used, if one was used, if it was not a deadly weapon, or, if it was a deadly weapon, it was not used in a deadly manner, then I charge you he would be justified. It would be for you to justify the use of it by words, that is to say, if the deceased used words, opprobrious words and epithets, to the defendant, it would be for the jury to say whether or not the defendant was justified in the use of the weapon. Now if the jury should believe, as I have already charged you, that the defendant was justified in the use of the weapon, but that it was not used with due caution and circumspection, why then he would be guilty of involuntary manslaughter in the commission of a lawful act. But if you should believe, from the evidence, that the weapon was a deadly weapon, in the manner in which it was used,

then I charge you that words would not justify the use of it; and it would be for the jury to say whether it was a deadly weapon, or not, in the manner in which it was used; and if the killing was done then in that way by the defendant, with no intent to kill, if he had no intent to kill, and there was no malice at the time of the killing, why then I charge you that it would be involuntary manslaughter in the commission of an unlawful act." This charge not only gave all contended for by the plaintiff in error, but was really more favorable than the defendant had any right to expect; for it would have permitted the jury to acquit the defendant and justify him in the killing for the use of mere words. The error in the charge was prejudicial to the State, and not to the defendant. The phrase to which exception is taken, that "such killing would be voluntary manslaughter unless justified," instead of excluding involuntary manslaughter from the consideration of the jury, as assigned, is fully explained and referred to in the very full charge upon the subject of involuntary manslaughter, delivered by the court.

5. The complaint made in the fifth ground of the motion is that the court, in the charge upon which error is assigned, excluded from the jury the law of involuntary manslaughter in the commission of an unlawful act, under the evidence in the case. Boiled down, it is nothing but a complaint that the law of involuntary manslaughter was not charged in immediate connection with the charge assigned as error. As stated above, the judge instructed the jury on each grade of homicide, clearly, fairly, fully, and in accordance with the law, and so carefully called the attention of the jury to the distinctions to be drawn, that this assignment of error is in our judgment absolutely without merit. Summing up all the different points made by the plaintiff in error, an inspection of the charge as a whole discloses the fact that each and all of them are answered by the presentation to the jury of every principle insisted upon by him, except that the judge very properly did not charge upon the weight to be given to threats. And in the absence of a proper request upon that subject, the omission to present it to the jury is not reversible error, under the facts of this case.

6. The plaintiff in error further insists that he is entitled to a new trial on account of the following language of the court, used

in charging the jury. "As honest, upright men, you take this case. You have the interest of society on the one hand, and you have the interest of the defendant on the other; and as honest, good men, men who love liberty, men who love society, men who love law and order, decide this case according to the evidence and the law as given you in charge by the court." After a review of the very impartial charge in this case, with which the jury could not have failed to be impressed, we are constrained to consider criticism of this portion of the charge as hypercritical. It is not necessary for a judge to refer to the importance of the case in his charge to the jury; but the propriety of doing so is purely a matter of discretion, and he can not be held to have erred unless in such remarks there is contained a misstatement of the law, or such an utterance as is calculated to prejudice the minds of the jury against the accused. The statement by the judge that the jury had the interest of society on one hand, and the interest of the defendant on the other, does not, without a forced construction, not to be drawn from the absolutely fair and impartial charge preceding it, necessarily imply that the interests of society were antagonistic to the interests of the defendant. It is not unlike the statement, very frequently made by trial judges, of the names of the parties to the case. It is not very dissimilar to the opening remarks of the charge of the court in *Cobb* v. *State,* 27 *Ga.* 681, to which no exception was taken. In *Akridge* v. *Noble,* 114 *Ga.* 950, 41 S. E. 78, it was expressly held that it is not erroneous for the judge to call the attention of the jury to the fact that they have taken an oath to try the case according to the evidence and the law as given them in charge by the court, and that they can not set up any ideas of their own in reference to the law of the case, in opposition to the charge of the court. In *Beck* v. *State,* 76 *Ga.* 453, complaint was made that the court erred in charging the jury to take the case without any desire to convict an innocent man or to acquit a guilty one, but with the sole purpose of vindicating the law and finding the truth of the case; and the Supreme Court held that there was no error in this part of the charge, that "it is the duty of the jury to vindicate the law."

It will be noticed that the closing instruction of the court was that the jury should "decide the case according to the evidence, and the law as given you in charge by the court." The first and

second assignments of error are, that the verdict was contrary to the evidence, without evidence to support it, and against the weight of the evidence. In our view the plaintiff in error has no reason for complaint, upon these grounds, which we are authorized to consider. The evidence fully sustains the verdict, though the jury, under the charge of the court, would have been justified in finding a verdict for involuntary manslaughter of either grade, or in acquitting the accused. This court can not consider the question of evidence, unless for want of evidence a verdict is contrary to law.        *Judgment affirmed.*