### 3439.　CARSWELL v. THE STATE.

1. Where a killing took place in front of a store and across the street from it, a statement of the accused, after he had walked away from the scene of the difficulty and into the store, in which he voluntarily said to the bystanders, "Men, what I done, I had to do it," was not improperly rejected as not being part of the res gestæ, on the ground that it was not free from suspicion of device or afterthought.
2. Under the evidence, there was no error in failing to charge the law of involuntary manslaughter.
3. The judge was justified in not permitting counsel for the defendant to use, in his argument before the jury, a gun which had not been introduced in evidence.
4. When the excerpt upon which error is assigned is considered in connection with the judge's charge as a whole and with the facts of the case, it appears that there was no error in the charge on provocation by words, threats, and contemptuous gestures.
5. The request to charge was not adjusted to the evidence.

　　　　　　　　DECIDED NOVEMBER 7, 1911.

Indictment for murder; from Laurens superior court—Judge Martin. April 12, 1911.

Robert Carswell was convicted of voluntary manslaughter. From the evidence it appears, that on his going into the store of Lee Royal, the deceased, the latter charged him with having been "dodging around" his (Royal's) house after his twelve-year-old daughter. The defendant denied the charge, but Royal said that if he heard of it again he would kill the defendant. · As the quarrel progressed, there was mutual cursing. As to what happened after this, the evidence is in conflict. The defendant and his witnesses say that he was ordered out of the store, and went directly across the street to another store, and was sitting on the porch of that store, when Royal, with a breech-loading shotgun, went out of the side door of his store, and around towards the back of the other store, slipped up on the defendant unawares, cocked the gun, and, pointing it at the defendant's head, said, "Don't you move;" that the defendant grabbed the barrel of the gun and endeavored to wrest it from Royal's hand, and, in the scuffle that followed, shot Royal three times with a pistol; two of the wounds being of fatal character. After the three pistol-shots, a gun was fired, and the shot from it took effect in Royal's hip. This wound was not necessarily of fatal character. According to the defendant's statement, the gun was discharged either by him or by Royal in the scuffle.

A few moments before his death Royal made a statement, to the effect that after the quarrel had begun, and while he was standing in the door of his store with the gun under his arm, the defendant's brother grabbed it, while the defendant shot the pistol three times, after which the brother shot the gun, inflicting the fatal wounds. This statement, as related by the wife of the deceased, is in conflict with the version of the eye-witnesses, and is not consistent with the physical fact that his body was directly in front of the store across the street, where the defendant and his witnesses said he went after leaving the store of the deceased.. There was evidence that the deceased was of a violent character, and that he had purchased a box of gun shells a short while before the homicide.

*Howard & Hightower,* for plaintiff in error.

*E. D. Graham, solicitor-general,* contra.

RUSSELL, J. (After stating the foregoing facts.) 1. The defendant contended that the court erred in excluding from the jury his statement, made a short while after the fatality, under the following circumstances: After the three pistol-shots and a pause of a few seconds came the gunshot. Then the defendant's brother came into the store door with the gun in his hands, and said: "Let me have some shells. I am going out there and kill that God damn Charles McCall, who is the instigation of all this row." The storekeeper said: "You get out of this store with that gun. You can't get no shells in here." Whereupon the speaker walked back to the door, looked out on the ground, then slipped back in the store, and handed the gun to a bystander, remarking: "There's nothing in it." About that time the defendant jumped right up in the door, with the pistol in his hands, and said: "Men, what I done, I had to do it." On motion this statement was ruled out, and the question presented is whether it was admissible as a part of the res gestæ. The witness estimated that the time elapsing between the gunshot and the making of the statement was about half a minute.

Under such circumstances a witness's estimate of the exact number of seconds or minutes intervening is not very trustworthy. The important fact is that the statement was made, not during the fight, but after it was over, and after the defendant had left the scene of the homicide and appeared before the onlookers. How-

ever brief the time, the physical facts show that the statement was not wholly free from the suspicion of device or afterthought.   As is said in *Hall* v. *State*, 48 *Ga.* 607: "The res gestæ of a transaction is what is done during the progress of it, or so nearly upon the actual occurrence as fairly to be treated as contemporaneous with it.   No precise point of time can be fixed a priori where the res gestæ ends.   Each case turns on its own circumstances.   Indeed, the inquiry is rather into events than into the precise time which has elapsed."

It has been held that a witness could not testify that within a minute after the shooting, another person ran into the house, a distance of 25 or 30 steps from the scene of the shooting, and whispered that the accused had shot the deceased.   The whispering indicated premeditation, rather than spontaneous exclamation; there being apparently nothing to call for the lowering of the voice, if the speaker was prompted by natural. impulse only. *Futch* v. *State*, 90 *Ga.* 472 (16 S. E. 102).   The line of demarcation between self-serving declarations, inadmissible under the hearsay rule, and involuntary spontaneous verbal acts, admissible as part of the res gestæ, is shadowy and hard to delineate with accuracy and generality.   Circumstances alter cases, and each case must be governed by its own peculiar and individual facts.   The defendant in this case, in saying that he had to kill, was not making an involuntary exclamation, but had left the scene of the killing, and reason had returned.   We are of the opinion, therefore, that there was no error in excluding the testimony.

2.   Complaint is made that the judge erred in failing to charge the law of involuntary manslaughter.   Under the dying declaration offered by the State, the defendant was guilty of murder.   According to the statement of the accused and the evidence in his behalf, the killing was justifiable.   Under no theory was the killing unintentional or involuntary, and therefore the judge very properly omitted the law of involuntary manslaughter from his charge.   Indeed, it would have been reversible error to have so charged under such circumstances.   *Branch* v. *State*, 5 *Ga. App.* 651 (63 S. E. 714) ; *Clark* v. *State*, 117 *Ga.* 254 (6), (43 S. E. 853).   In holding that the evidence authorized the charge on the law of involuntary manslaughter in the case of *Chapman* v. *State*, 120 *Ga.* 855, 857 (48 S. E. 350, 351), it was said: " If the brick was

hastily picked up and thrown, with no intention of killing the deceased, and the evidence failed to disclose that the brick was either a deadly weapon or was thrown in such a manner as ordinarily would have produced death, the homicide would be involuntary." Here the evidence discloses both that the weapon used was deadly and that it was used with the intention to kill. In the other case relied on by counsel for plaintiff in error, *Dorsey* v. *State,* 126 *Ga.* 633 (*55* S. E. 479), the fatal blow was made with the end of a billiard-cue of a kind and character from which the jury could have inferred that there was no intention to kill.

3. In arguing the case to the jury the defendant's counsel undertook to illustrate with a single-barrel shotgun how the gunshot wound could have been inflicted as the defendant had stated. On objection from the solicitor-general that the gun had not been introduced in evidence, the judge refused to permit the use of the gun as aforesaid. It does not appear whether the gun which it was sought to use was the one with which the deceased was shot. Ordinarily, in illustrating to the jury an argument, counsel may use any means at hand; but it would be manifestly unfair to permit a party to get the benefit of having introduced evidence which had not been introduced. Under the circumstances, we see no reason for reversing the judgment because of this supposed error. *Nobles* v. *State,* 127 *Ga.* 213 (4), (56 S. E. 125).

4, 5. When the charge as a whole is considered in connection with the excerpt upon which the assignment of error is predicated and the facts of the case, the law relating to provocation by words, threats, and contemptuous gestures was correctly given. Irrespective of whether the written request was a correct statement of the law in the abstract, it was not adjusted to the evidence, and therefore there was no error in refusing to give it in the charge. None of the assignments of error present any reason for a reversal of the judgment. *Judgment affirmed.*