## HUNTER *v.* THE STATE.

1. The testimony of a witness who was examined at a former trial of a criminal charge, where opportunity of cross-examination was afforded, is admissible in evidence at a subsequent trial of the same defendant on the same charge, upon proof that the witness is beyond the jurisdiction of the State.

2. Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as a part of the res gestæ. The declarations admitted in this case were not of the character indicated; and their admission was, under the facts, reversible error.

3. Under the facts of this case, the following instructions to the jury were erroneous: "A man is presumed to intend the natural consequences of his act; and if this man struck [the deceased] with a rock and [the deceased] died from that blow, he is presumed to have intended to kill him." "If you are satisfied beyond a reasonable doubt that this defendant did with malice aforethought intentionally strike [the deceased], from which blow he died, and that the blow was without justification, or provocation which would reduce it from murder to some lower grade of homicide, then the form of your verdict would be,

'We, the jury, find the defendant guilty.' That would mean guilty of murder." The evidence did not demand a finding that the instrument with which the deceased was struck was a weapon likely to produce death when used in the manner shown; and the intention of the defendant, if the jury should find that he in fact struck the deceased, was a question for the jury.

4. The remaining assignments of error examined, and held not to show cause for reversal.

No. 706. APRIL 12, 1918.

Indictment for murder. Before Judge Hill. Fulton superior court. November· 10, 1917.

*Colquitt & Conyers* and *Hughes Roberts,* for plaintiff in error.

*Clifford Walker,* attorney-general, *John A. Boykin,* solicitor-general, *E. A. Stephens,* and *M. C. Bennet,* contra.

GEORGE, J. U. J. Hunter was convicted of the murder of M. B. Young, and recommended to mercy. The State introduced testimony tending to show that on Saturday morning, March 31, 1917, Young came into Atlanta on an Edgewood avenue street-car. The car stopped at Fort street about 7:35 a. m., and in going out of the car Young had an altercation with a young negro man who appeared to block the way out. After getting off the car Young stepped to the edge of the sidewalk, and was in the act of lighting a cigar when suddenly he was hit on the head with what the evidence describes as a "rock," a "brick," or a "flat rock," which had been picked up and thrown at him by the negro with whom the altercation was had on the car, and who had alighted from the car just as it moved off. The negro fled, and Young, stunned by the blow, sat down. A few minutes thereafter an automobile hastily carried him to the Grady hospital; the distance from the scene of the difficulty to the hospital being, according to one of the witnesses, "a three-minutes ride in an automobile, or a five-minutes walk." The wound, which appeared to be a slight superficial injury to the scalp, was dressed at the hospital; and Young left the hospital unassisted, for the purpose of going to his work, but on reaching the walkway he suddenly sank down, in the language of one of the medical witnesses for the State, "without any apparent rhyme or reason," lost consciousness, and died about five or six o'clock of the same day. Subsequent examination revealed a bloodclot upon the brain, from which death resulted. The evidence for the State tended to show that the negro with whom the altercation on the car occurred was the defendant

on trial, while the defendant contended, in his evidence and statement to the jury, that he was not on the car and did not have an altercation with the deceased. His witnesses testified that another negro (identifying him) was on the car and in fact engaged in the altercation. The case turned on the identity of the accused with the person who assaulted the deceased.

1. On the trial the court permitted the State to put in evidence the testimony of two witnesses delivered by them in person on a former trial of the defendant under the same indictment, over the objection that such evidence was incompetent and violated the constitutional right of the defendant to be confronted in person with the witnesses against him. The preliminary proof made by the State was that these witnesses at the time of the present trial were not in the State of Georgia. The witnesses were therefore inaccessible to the State, and their testimony delivered in person on the former trial of the defendant under the same indictment was admissible over the objection urged. The precise question was considered and ruled adversely to the contentions of the plaintiff in error in *Smith* v. *State,* 147 *Ga.* 689 (95 S. E. 281).

2. Over the objection that the same was hearsay, the State was allowed to prove the declarations made by the deceased to the hospital physician after he had been taken to the hospital and while his wound was being dressed, from ten to twenty minutes after the infliction of the injury, as nearly as can be gathered from the evidence. The statement was in direct response to inquiries of the physician. It follows: "He [the deceased] said, in attempting to get off this street-car there was a negro in the way, and he first asked him to get out of the way, and the negro would not move, and in order to get off the car he elbowed him, pushed him out of the way; he got off the car at Fort and Edgewood and stopped at the corner at a telephone post to strike a match to light a cigar, and just as he finished lighting it he turned and noticed this negro come close to him, and said that was all he could remember. He said he was hit in the head, with what he did not know at that time; it stunned him. I says, 'Did you chase him?' He says, 'No, I could not, I was stunned, I did not know which way to turn.' . . He described the one who assaulted him as being a young slender negro compared in height to officer McCullum. He described him also as being snagley tooth; and in reply to the

question whether the teeth were bad, he said they were not particularly bad but they were irregular. He said he was dressed in a brown check suit, and expressed his attire as being dudish, expressed three or four times as to being a dudish looking negro. I don't remember any detailed description, except he was dressed in this brown check suit and the negro was gingercake." Over the same objection the State was allowed to prove the declarations made by the deceased, from twenty to thirty minutes after he had received the injury, in direct response to inquiries of a police officer who had gone to the hospital for the purpose of ascertaining from the deceased the description of the assailant. The declarations as testified to by the officer were in detail the same as set out above. There is a suggestion in the brief of the solicitor-general that these statements were admissible as dying declarations. The record does not warrant such suggestion; and the trial judge admitted the evidence as a part of the res gestæ, and so instructed the jury. As such we will consider it. Under our code, declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible as a part of the res gestæ. Civil Code, § 5766. "The res gestæ of a transaction is what is done during the progress of it, or so nearly upon the actual occurrence as fairly to be treated as contemporaneous with it. No precise point of time can be fixed a priori where the res gestæ ends. Each case turns on its own circumstances. Indeed, the inquiry is rather into events than into the precise time which has elapsed. Is the proof offered of a matter fairly a part of the same transaction? Is it an event happening naturally and spontaneously as a part of the occurrence under investigation?" *Hall* v. *State*, 48 *Ga.* 607, 608. The declarations of the deceased can not be rejected on account of the mere lapse of time between the main transaction and the time of the making of the declarations. Yet the declarations, in order to be admissible in evidence, must accompany the act or be so nearly connected therewith in time as "to be free from all suspicion of device or afterthought." That the declarations may in fact be true is not the test. It is certain that the declarations admitted in this case did not accompany the act; and it is equally certain that they were not so nearly connected therewith in point of time, the other circumstances appearing in the evidence being considered, as

to be free from all suspicion of device or afterthought. *Savannah, Florida & Western Railway Co.* v. *Holland,* 82 *Ga.* 257, 267, 268 (10 S. E. 200, 14 Am. St. R. 158).

The assault upon the deceased had completely terminated before his declarations were made. He had been carried from the scene of the difficulty to the hospital. The declarations were made in response to direct inquiry. This fact alone would not render them inadmissible. The declarations were a mere narrative of past occurrences. They related to things happening upon the street-car and to the main fact in question. They have precisely the same force and effect as if they had been made days or even weeks after the occurrence. They depend for their strength and value upon the veracity of the declarant. It is impossible to lay down a rule by which to test in every case the admissibility of such declarations. They must, however, be contemporaneous with the main fact, or so nearly connected therewith in point of time as to be free from all suspicion of device or afterthought; and the nature and character of the declarations must be such as to show that they were spontaneously and voluntarily made, that is, that they were clearly and palpably influenced by the main fact in issue. *Futch* v. *State,* 90 *Ga.* 472, 478 (16 S. E. 102) ; *Western & Atlantic Railroad Co.* v. *Beason,* 112 *Ga.* 553, 557 (37 S. E. 863) ; *Walker* v. *State,* 137 *Ga.* 398, 401 (73 S. E. 368). On account of the error in admitting evidence of the declarations in this case, a new trial must be ordered.

3. One of the instructions of the court to the jury, complained of in the motion for new trial, was as follows: "A man is presumed to intend the natural consequences of his act; and if this man struck [the deceased] with a rock and [the deceased] died from that blow, he is presumed to have intended to kill him." The court also charged the jury: "If you are satisfied beyond a reasonable doubt that this defendant did with malice aforethought intentionally strike [the deceased], from which blow he died, and that the blow was without justification, or provocation which would reduce it from murder to some lower grade of homicide, then the form of your verdict would be, 'We, the jury, find the defendant guilty.' That would mean guilty of murder." Under the facts in the record these instructions were erroneous. They left out of consideration the character of the weapon and the manner of its

use. The evidence merely described the weapon as a brick, rock, or a flat rock. Whether the instrument, when used in the manner shown by the evidence, was a weapon likely to produce death is not made to appear. Every man, indeed, is presumed to intend the natural and probable consequences of his voluntary act. This is the extent of the presumption. The intention of the defendant, if he struck the deceased, was a matter for the jury. See *Henry* v. *State,* 33 *Ga.* 441, 449; *Taylor* v. *State,* 108 *Ga.* 384 (3, 4) 389 (34 S. E. 2.); *Farmer* v. *State,* 112 *Ga.* 80, 81 (37 S. E. 120); *Chapman* v. *State,* 120 *Ga.* 855 (48 S. E. 350); *Jordan* v. *State,* 124 *Ga.* 780 (53 S. E. 331); *Dorsey* v. *State,* 126 *Ga.* 633, 634 (55 S. E. 479); *Joiner* v. *State,* 129 *Ga.* 295 (58 S. E. 859); *Kelly* v. *State,* 145 *Ga.* 210, 212-214 (88 S. E. 822); *Boone* v. *State,* 145 *Ga.* 37 (2) 39 (88 S. E. 558); *Scrutchens* v. *State,* 146 *Ga.* 189 (4), 190 (91 S. E. 25).

4. The remaining assignments of error are not such as to require a reversal, and will not be specially considered. For the reasons pointed out in the second and third divisions of the opinion, the judgment overruling the motion for new trial is

*Reversed. All the Justices concur, except Fish, C. J., absent.*