CARTER *v.* THE STATE.

No. 7885.  OCTOBER 20, 1930.

*Dutch Wilkes, F. S. Twitty,* and *C. E. Crow,* for plaintiff in error.

*Robert B. Short, solicitor-general,* contra.

HINES, J.  Otis Carter was indicted for the murder of Mary Austin, alleged to have been committed with a metal ice-pick and other sharp instruments to the grand jury unknown, the same being a weapon likely to produce death.  The evidence for the State was substantially as follows:

O. H. Tompkins testified:  He saw both the defendant and the deceased on October 13, 1928, about ten a. m.; saw the defendant

stab the deceased. Before that time he had been in the house. Della wanted some stuff out of the commissary. He went there to get it for her. Defendant was around in the back, and deceased was in the kitchen. Della came to the commissary, and witness waited on her. About five minutes after that he heard somebody screaming. He went over where they were, and saw defendant on top of deceased sticking her. They were down by the back doorsteps. He hollered at the defendant. Joe Nelson went around there. Defendant threw up his hands, said that this woman got all his money, got up and started in the house. Nelson pulled him back. Defendant said he did not care what happened to him, that they could send him to the chair if they wanted to. Witness went up to the deceased; she was bleeding at the mouth. She wanted to say something to him, but she could not tell him what it was. Before that time she was in perfect health. Witness could see one or two wounds which looked like they were made with an ice-pick. Saw the pick. Nelson showed him where it was. Did not know how many wounds were on her body. She died on October 16. She died from these wounds in Mitchell County. Did not know anything about how the fight started. Deceased, defendant, and witness were trusties.

Della Dempsey testified: Was not present on October 13, 1928, when the defendant stabbed the deceased, but came up. Went to the commissary. Mary was washing some clothes for Mr. Tompkins. Went around the corner of the commissary, and heard deceased hollering. Ran on in there and said to the defendant, "What you all doing?" Deceased said, "Come in here and help me. Otis is sticking this ice-pick in me." Went in where they were. Defendant drew the pick on her. She ran out and called Tompkins. The deceased got out of the cage and up on the doorstep. The defendant snatched her down and started to sticking her again. Witness said, "Run, Mary." Defendant tore her dress off and was sticking her with the ice-pick. Witness told Mr. Tompkins to run, that Otis was killing Mary, and to hurry before he killed her. About that time Nelson ran up. Witness saw defendant stabbing Mary with the ice-pick. Mary lived until Monday night after that. Witness saw her body, helped bathe and dress her. She was stuck all the way on the left arm, just above the elbow and on the inside of the shoulder. Some of the places were

done up. She was stuck through the lips, in the chest and on the arm. Counted thirteen places where she was stuck. These wounds caused her death. The job of witness was cooking, and the job of deceased was washing and ironing. Deceased and witness stayed in the cage at night. Defendant worked around the house and stayed in the building at night.

Joe Nelson testified: Saw the defendant when he stabbed deceased on October 13, 1928. They were between the cage and back doorsteps. Defendant was down over her, attacking her with the ice-pick. Defendant got up and started in the house, and witness pulled him back. Defendant said he was ready for the chair or anything that happened. Witness said, "If you stick her again, you will die now." He carried deceased in the house, and Tompkins got the doctor. Witness stayed with deceased until she died on Monday night. Did not count all the wounds, but counted thirteen. She was stuck in the mouth, in the chest, on the left arm, and over her left breast. Would say these wounds caused her death. Witness identified the ice-pick, and it was introduced in evidence.

Tompkins, recalled, testified that the cage was about fifty feet from the back doorsteps. Nelson, recalled, testified that he stayed with deceased until she died on Monday night, and that deceased never did get up, as she was paralyzed.

The defendant made this statement: "I was on the gang when Mary came there. When she came there she didn't have anything. I kind of helped her out. I tried to be good to her. Captain whipped me about her, and from then on I didn't fool with her, because I didn't want to get into trouble. So we went on until that Saturday, the 13th. That Friday night, the 12th, they sent me after some flowers. The next morning I hadn't had anything to do with her, and I was doing my work. About ten o'clock she called me and said, 'Come over here.' I went up to where she was, and she asked me, 'Where did you go last night? You have been off with other women.' She said, 'I will fix you,' and started on me with the pick. I grabbed her arm and took it away from her and started to stabbing her, and I didn't know what I was doing. I knew that it was not right to fool with her, so I had let her alone after Captain whipped me about her. I did not want to have anything to do with her. After it had happened I hung by my neck a whole day about it."

The jury found the defendant guilty, with a recommendation. He moved for a new trial upon the general grounds and upon certain special grounds, all of which are herein dealt with.

■ Counsel for the defendant insist that the trial judge erred in failing, without request, to give in charge to the jury the law of involuntary manslaughter in the commission of an unlawful act, as defined in the Penal Code, § 67, inasmuch as the evidence failed to disclose the size, length, make, character, and nature of the weapon with which the deceased was killed. The ice-pick with which the deceased was stabbed to death was introduced in evidence and was before the jury. The evidence disclosed the manner in which this instrument was used. It showed that at least thirteen wounds were inflicted upon the person of the deceased. Under the evidence, involuntary manslaughter was not involved in this case. There is nothing in the evidence to show that the killing in this case was unintentional. If this grade of homicide was involved, it arose from the statement of the defendant, to the effect that when he inflicted these numerous wounds on the person of the deceased he did not know what he was doing. Where there is nothing in the evidence to indicate that the killing was not intentional, and where no charge is requested on that subject, involuntary manslaughter is not an issue in the case, and no allusion should be made to it by the judge in charging the jury, even though the prisoner's statement by indirection suggest such a theory. *Jackson* v. *State,* 91 *Ga.* 271 (3) (18 S. E. 298, 44 Am. St. R. 22); *Thornton* v. *State,* 107 *Ga.* 683 (6) (33 S. E. 673); *Reed* v. *State,* 148 *Ga.* 18 (4) (95 S. E. 692). In *Ray* v. *State,* 15 *Ga.* 223, the defendant hastily took up a board with which, in a conflict, he inflicted blows that produced death; and this court held that malice would not be implied, because the weapon used was not one likely to produce death. In *Taylor* v. *State,* 108 *Ga.* 384 (34 S. E. 2), there was nothing to show the nature of the weapon, except that it was "a piece of wood" and caused the death; and this court held that it did not necessarily result that it was a weapon likely to produce death, or that the use of it established beyond controversy an actual intention to kill. In *Farmer* v. *State,* 112 *Ga.* 80 (37 S. E. 120), a bottle was hurled by the accused, which was broken when it struck the head of the deceased. The defendant made no further effort to injure the deceased. This court said: "There

being evidence from which the jury could have found that the accused did not intend to kill the deceased when he threw the bottle, the jury would have been authorized to find that the offense committed was involuntary manslaughter in the commission of an unlawful act." In *Dorsey* v. *State,* 126 *Ga.* 633 (55 S. E. 479), the deceased used an insulting epithet to the accused, and menaced him by drawing his hands from his pockets and placing them in a fighting attitude. It did not appear that the deceased had any weapon. The accused thereupon struck the deceased with a walking-stick which had been made from a billiard-cue. The weapon used was before the jury. This court held that involuntary manslaughter was involved.

In *Jordan* v. *State,* 124 *Ga.* 780 (53 S. E. 331), the defendant hurled a rock at the deceased who was running from him. She was struck by it and killed; and this court held that involuntary manslaughter was involved, and that an appropriate instruction on this matter should have been given to the jury. In *Joiner* v. *State,* 129 *Ga.* 295 (58 S. E. 859), the blow was inflicted with an instrument which would not ordinarily produce death, and which the accused had hastily picked up, and with which without sufficient provocation he struck and killed the deceased; and this court held that it was error to fail to charge upon the law of involuntary manslaughter. In *Kelly* v. *State,* 145 *Ga.* 210 (88 S. E. 822), the mortal wound was inflicted by the use of a limb from a tree, 58 inches in length and 8 or 9 inches in circumference; and this court held that involuntary manslaughter was involved. In *Bryant* v. *State,* 157 *Ga.* 195 (121 S. E. 574), it was stated that if there was a conflict between the *Thornton* and the *Kelly* cases, the latter must yield to the full-bench decision in the *Thornton* case. In *Scrutchens* v. *State,* 146 *Ga.* 189 (91 S. E. 25), both the deceased and the defendant, while ten or twelve feet apart, stooped to get rocks from the ground; the accused first secured a rock, and while the deceased was still in a stooping position trying to pick up a rock, the defendant threw his rock and struck the deceased on the head, from which he died the night following the day of the encounter. In these circumstances this court held that the trial judge should have instructed the jury upon the law of involuntary manslaughter in the commission of an unlawful act. The instant case is distinguishable from the cases cited, where the evidence requiring a

charge upon involuntary manslaughter in the commission of an unlawful act appeared from the evidence introduced by the State. That is not so in this case. It appears from the evidence that the defendant inflicted many wounds on the person of the deceased. He stated, during the progress of the difficulty, that the deceased had got all of his money; and this seemed to be the motive which impelled him to kill her. After the deceased was taken into the house, the defendant started in after her, apparently with the intent to inflict further violence on her; and Nelson pulled him back. The defendant stated that he did not care what happened to him, that they could send him to the chair if they wanted to. As the ice-pick was put in evidence, as it was shown that many wounds were inflicted upon the person of the deceased with this instrument, and that the wounds were of fatal character, as the defendant continued to stab the deceased when she was down on the ground calling for help and after he had been warned by bystanders to desist, and as he made a statement which seemed to indicate that he killed her because she had taken his money, and from other facts appearing in the evidence, it can not be said, under the circumstances disclosed by the evidence, that involuntary manslaughter was involved in the case, and that the judge erred in failing, in the absence of a timely written request, to instruct the jury upon the law applicable in cases of involuntary manslaughter in the commission of an unlawful act.

■ It is next insisted that the judge erred in failing to charge the jury upon the law of voluntary manslaughter as related to the doctrine of mutual combat. It is well settled that where the evidence would warrant a finding that the defendant and the deceased, upon a sudden quarrel, each being armed with a deadly weapon, mutually engaged in a mortal combat, each using his weapon and intending to kill the other therewith, it is the duty of the judge, with or without a request, to give in charge to the jury the law of voluntary manslaughter as related to the doctrine of mutual combat; and the omission so to do is cause for a new trial, where the accused was convicted of murder. *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77) ; *Buchanan* v. *State,* 153 *Ga.* 866 (113 S. E. 87). But in this case the evidence does not show mutual combat between the defendant and deceased at the time of the homicide; and the omission to charge upon voluntary manslaughter as related

to mutual combat was not error requiring the grant of a new trial. *Holland* v. *State,* 166 *Ga.* 201 (142 S. E. 739). Even if the statement of the accused authorized a charge upon the subject of voluntary manslaughter arising out of a mutual combat, there was no request in writing so to charge; and in the absence of a written request, the court was not bound to present a theory of the case based solely upon the statement of the defendant. *Mars* v. *State,* 163 *Ga.* 43 (14) (135 S. E. 410).

■ The court gave in charge to the jury the principles of law touching self-defense, embraced in sections 70 and 71 of the Penal Code. The defendant excepts to these instructions, upon the ground that they limited the defense provided in section 73, and were misleading and confusing to the jury as to the defenses provided by those three sections. The exceptions to these instructions are without merit. Giving the law applicable to self-defense and the defense of reasonable fears in no way limits the defense provided by section 73. The giving of these correct instructions could not mislead the jury, nor did they confuse the jury as to the defenses provided by sections 70, 71, and 73. In *Powell* v. *State,* 101 *Ga.* 9 (29 S. E. 309, 65 Am. St. R. 277), the defendant relied, among other defenses, upon self-defense. This defense is available to one who kills to save his own life or to prevent the commission of a felony upon his person. After giving the correct principle embraced in this section, the court instructed the jury that before the defendant would be justified and the jury would be authorized to find him guilty of no offense, they must believe from the evidence that it was necessary for him to take the life of the deceased in order to save his own life. This court held that this instruction unduly limited the doctrine of self-defense, as it confined it to the necessity to kill in order to save his own life, and omitted that part of the doctrine of self-defense which justifies one in killing another to prevent a felony upon his person. While it is erroneous to charge sections 70, 71, and 73 in immediate connection, it is not erroneous to charge the first two sections in this manner.

■ The defendant insists that the court erred in charging the jury as follows: "If you find that the defendant used the instrument described in the indictment, and that he used it as set forth in the indictment, and that it was a weapon likely to produce death in the manner in which you find it was used, then if the accused

was not justified, under some rule of law about which you have or will be instructed during the charge, in the use of the weapon in and at the time he used it, if you find that he did use it to the effect as set forth in the indictment, then the accused would be guilty of murder, or of voluntary manslaughter, according to whether the act was done with deliberation, or malice express or implied, or as the result of passion not brought about by words only; of course it being for the jury in all cases to say whether or not the defendant used any weapon as set forth in the indictment." The defendant excepts to this instruction, upon the grounds that it was not a proper one under the evidence, and that the court did not charge the law of involuntary manslaughter in connection therewith or elsewhere in the charge. This was a proper instruction under the evidence; and the court did not err in failing to charge in connection therewith, or elsewhere in his charge, the law of involuntary manslaughter, for the reason that involuntary manslaughter, as we have undertaken to show, was not involved under the evidence; and because there was no timely request in writing to charge upon the law of involuntary manslaughter, if the same arose under the statement of the accused.

■ The judge charged the jury as follows: "Now, if you find and believe that the defendant did, in this county, at any time prior to the filing of this indictment, with the weapon named in this bill of indictment, and with malice aforethought, either express or implied, kill Mary Austin, as charged in this indictment, then you would be authorized and it would be your duty to convict the defendant of the offense of murder." The exceptions are that this instruction is not the law; that one may slay another with malice and not be guilty of murder; that said charge was practically a direction by the court to the jury to find the defendant guilty of murder; and that the court should have charged in connection therewith that the defendant would be guilty only in the absence of mitigating circumstances or justification. It is true that one may kill another with malice and not be guilty of murder. *Golden* v. *State,* 25 *Ga.* 527. If the instruction complained of had informed the jury that they should convict the accused if he killed the deceased with malice, and had gone no further, such instruction would have been open to the attack made upon it; but the judge went further and told the jury that if the defendant with malice

aforethought killed the deceased "as charged in the indictment," then it would be their duty to convict the defendant of murder. The indictment charged that the defendant unlawfully, feloniously, and with malice aforethought killed the deceased. The charge complained of in effect instructed the jury that if the killing was unlawful, felonious, and with malice, they should "find the defendant guilty of murder," but did not tell the jury that they should convict him if the proof showed only a malicious killing. One can not kill another unlawfully, feloniously, and maliciously and not be guilty of murder. Taken as a whole, this instruction amounted to this, and no more. So was not open to the above grounds of exception taken.

■ It was insisted by counsel for defendant that the venue was not proved, and that for this reason a new trial should be granted. The indictment alleges that the crime was committed in Mitchell County. The deceased and defendant were trusties in the chain-gang of that county. About five minutes before the deceased was stabbed she was in the kitchen of the commissary, and the defendant was at the back of that building. Hearing some one screaming, a witness went to the back doorsteps of the commissary, and found the defendant on top of the deceased, stabbing her with the ice-pick. This witness testified that the deceased "died from these wounds in Mitchell County." It is contended that this was not sufficient proof of the venue, for the reason that the deceased might have died from these wounds in that county, while the wounds were not inflicted in that county. This is too narrow a view of the evidence. A witness heard deceased calling. This witness went to where they were. The deceased said, "Come in here and help me. Otis is sticking this ice-pick in me." This was in the cage. The deceased got out of the cage and upon the doorstep of the commissary. The defendant snatched her down and started sticking her again with the ice-pick. This was between the cage and the back doorstep. The deceased was taken into the commissary, and she stayed there until she died. This proof, in the absence of any evidence to the contrary, was sufficient to establish the venue as laid in the indictment.

*Judgment affirmed. All the Justices concur.*