DANIEL ORR, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

New trial granted because verdict contrary to evidence. To convict upon circumstantial evidence, the proof must exclude every reasonable hypothesis but that of guilt.

Simple Larceny. In Hall Superior Court. Tried before Judge HUTCHINS. March Term, 1865.

Orr was indicted jointly with one James E. Welch for stealing a horse, the property of James Spencer, on the eleventh of March 1864.

At the trial the evidence was as follows:

*James Spencer*—In March 1864, lost one large sorrel horse in Hall county, his property, worth $150 to $200—before March court 1864. Got up in the morning—his horse was gone. Near by, three horses had been hitched. Got on the track—three others and his horse's track. Went on towards Lawrenceville. Made a short turn, and went towards widow Pew's. Went on to Mrs. Pew's, which is about one and a half miles by the traveled road. Made inquiry, and went to Orr's. Orr acknowledged he went there with cavalryman. Pursued from Mrs. Pew's. Went down a branch through the woods. Went to where they came in the road again, and then pursued the tracks towards Orr's. Asked Orr what had become of the cavalryman. Orr said he left them after passing Mrs. Pew's. He first said he left them before they got to Mrs. Pew's. Witness said "One of the tracks looks like your mare's." Orr's conduct looked dark. He fired up and said witness must leave. Asked Orr to go and see a horse supposed to be left by the cavalryman. He refused. Witness turned back and struck the track, and traveled on to Lawrenceville. His mare failed. He turned back. In two or three days he saw Welch at his son's. Got his horse. Orr resides about a mile from witness. His horse was barefoot and made a large track. Witness and Orr had been friendly until a little while before losing the horse.

*Calvin Spencer*—Went with James Spencer in pursuit. Corroborates him in every thing except that the horses in the night went down the branch, and did not go to Mrs. Pew's. When they went to Orr's and asked him, Simmons, and others, to go to see a horse left, supposed to be by the cavalry, to identify him, Orr refused, saying J. Spencer was a damned old rascal and tory. The horse left was Welche's, and was afterwards sold for costs. His father's

horse was tracked to about a quarter of a mile of Orr's house. Witness pursued the horse to two or three miles beyond Stilesboro' in Bartow county, and there captured the horse and James E. Welch. Welch was tried and convicted at the last March term of this Court. He was not friendly with Orr.

*James E. Simmons*—Was at Orr's house the night the horse was stolen. Had been there since twelve o'clock of that day. Orr was not at home. He went to bed about nine o'clock. Next morning Orr was there in bed. Was there when Spencer called. Calvin said his father asked Orr to go and see if the horse left was one of the cavalryman's horses. Orr refused. They talked short to each other.

*Thomas Pugh*—Resides about a mile and a half from Orr's. Orr and two cavalrymen, and his brother, Van Pugh, came to his mother's the night the horse was taken. Orr played the fiddle and the others danced awhile. Stayed from one hour to an hour and a half, and left about nine o'clock. Welch and McMillen were the cavalrymen. They left, and Orr said they were going to Isaac Rylee's, who lives in a different direction from Spencer. After they went out of the gate, the roads forked to go to Rylee's, Orr's, and Spencer's. He did not see which way they went. It was dark. The two cavalrymen were strangers.

*Absalom Martin*—Orr and Van Pugh, and two other men, came to his sister, Hannah Holland's, about half an hour in the night. Orr asked if they could stay all night. Hannah told them they could not. They went off toward Mr. Spencer's—the road leading by Mrs. Pugh's and to Orr's.

The jury found the defendant "guilty in the second degree."

Whereupon, his counsel moved for a new trial, on the following grounds:

1. Because the verdict is contrary to law, the jury having no right to qualify their verdict, the bill of indictment making no distinctions or degrees of guilt.

2. Because the verdict is contrary to the evidence.

3. Because the verdict is contrary to the weight of the evidence.

4. Because the verdict is contrary to the charge of the Court, which was that the jury must not find the defendant guilty upon suspicion or vague conjectures, but there must be facts proven beyond a reasonable doubt.

The Court refused a new trial; and this is the error alleged.

JOHNSON and HEATH, for plaintiff in error.

BOYD, Sol. Gen. *pro tem.*, for the State.

WALKER, J.

It is not disputed that Welch stole the prosecutor's horse: the question here is, does the evidence prove Orr guilty also? The testimony against him is entirely circumstantial. In order to convict upon this character of testimony, " it is essential that the circumstances should, to a moral certainty, actually exclude every hypothesis but the one proposed to be proved." 1 *Stark, Ev.* 575. The evidence " in criminal cases must exclude every other hypothesis but that of the guilt of the party." 1 *Greenl. Ev.* 13. "And this degree of conviction ought to be produced, when the facts proved coincide with and are legally sufficient to establish the truth of the hypothethis assumed, namely, the guilt of the party accused, and are inconsistent with any other hypothesis. For it is not enough that the evidence *goes to show* guilt; it must be inconsistent with the reasonable supposition of his innocence." 3 *Greenl. Ev.* 29. " Circumstances, satisfactorily proven, which point to his guilt, and which are *irreconcilable with the hypothesis of his innocence,*" etc.; " circumstances which would authorize *a bare conjecture* of guilt, are not sufficient to warrant a conviction."- *Newman vs. the State*, 26 *Ga. R.*, 637–8. Tried by these principles, the evidence fails to establish the guilt of Orr. It shows that he was in

44

*bad campany*, and might authorize "a bare conjecture of guilt," but, we think, is not sufficient to "generate full belief of the fact, to the exclusion of all reasonable doubt." If it be true, as Orr said, that he left the cavalrymen, after passing Mrs. Pew's, and went home, of course he is not guilty; and this is a very reasonable hypothesis, consistent with Orr's innocence. In Newman's case [26 *Ga. R.*, 633] the circumstances were more strongly against defendant, in my opinion, than they are in this case; and there a new trial was granted, because the verdict was contrary to evidence.

When this case was tried, in March, 1865, we remember an immense amount of horse-stealing was carried on, all over the country; and it is not surprising that Courts and juries, in their zeal to punish offenders, should not only find the real parties guilty, but should, sometimes, as in this instance, convict others who, by the testimony, are not shown beyond a reasonable doubt to be guilty. If this party be guilty, perhaps upon another trial the fact may be made more clearly manifest; if innocent, he should not be punished. We think the ends of justice require that there should be a new trial in the case, which, accordingly, we direct.

Judgment reversed.