### BELL *v.* THE STATE.

1. A statement by the accused that he knows who committed a crime and that he was present when another person (naming him) committed it, is not a confession, direct or indirect, of his own guilt, nor is his failure to deny, during a legal investigation before a judicial officer, a statement imputed to him by another accused person, equivalent to an admission that the imputation is true, silence on such an occasion being, if not required, at least justified as matter of decorum, in the presence of a tribunal.
2. The evidence being entirely circumstantial, and, though consistent with the guilt of the accused, not inconsistent with every other rational hypothesis, and being insufficient to show guilt beyond a reasonable doubt, a new trial is ordered.

March 19, 1894. Argued at the last term.

Indictment for arson. Before Judge BARTLETT. Bibb superior court. April term, 1893.

ELLIS & JORDAN, G. V. STEED and M. W. HARRIS, for plaintiff in error.

W. H. FELTON, Jr., solicitor-general, *contra.*

SIMMONS, Justice.

Willie Bell and John Fambro were indicted for arson. They severed; Bell was convicted, and his motion for a

new trial being overruled, he excepted. The house alleged to have been burned was in the city of Macon, and was occupied as a dwelling by Mrs. Ray, a daughter of the owner, and Bell was a servant living upon the premises. It appears that between two and three o'clock in the morning, Mrs. Ray discovered that the back door steps and the room which had been occupied by Bell were on fire. She did not think he was occupying the room that night. It does not appear that he was seen on the premises. One witness testified, however, that among the crowd on the opposite side of the street, looking at the fire, she saw a person whom she "most thought" was Bell. According to another witness, Bell said he was near the house, at Henry Hammond's restaurant, at the time of the fire. When asked by Mrs. Ray if he did not set the house on fire, he denied it, and upon her asking him then why he did not help her to get her things out of the house, he said he did not know it was her house. Subsequently he stated that Fambro set the house on fire and that he saw him do so. A woman employed on the premises testified that about ten days before the fire she discovered a little bottle of oil and a lamp in the yard, near the house, and asked Bell about them, but he said he knew nothing about them. Upon an investigation before the recorder, Fambro stated that Bell acknowledged to him, at the time the lamp and oil were found, that they were his, and said he wished he "had done it last night," but when Fambro asked what he meant, replied, "I had better not talk too much." Bell was present but did not deny this statement at the time it was made to the recorder, but during the course of the investigation he repeated to the recorder the statement he had already made, that the house was burned by Fambro. One of the witnesses stated that the fire started about ten feet from where the cooking was done, and could not have

originated from the stove. There was no other evidence tending to connect Bell with the burning. On the other hand, Bell introduced testimony to the effect that he was at a house some distance from the scene of the burning and had been there for several hours when the alarm of fire was given, and that it was from there that he went to Henry Hammond's restaurant. It did not appear that he had any motive for burning the house. Mrs. Ray testified that she had told him he could not stay with her any longer unless he stayed every night, and that on Sunday night, a week before the fire, he he left, and on Monday did not come to work, for which reason she had the door of his room locked Monday night, but on Wednesday he asked her to let him come back, she consented, and he came back and did his work as before, and from then until the time of the fire "everything was all right; she had no idea of any trouble at all." She had not locked the door of the room he occupied, for two nights before the fire occurred. She had given him all his clothes for several months before, and "had always been as kind to him as she possibly could be." The only evidence relied upon to connect him with the burning, besides the belief of a witness that he was present near the scene of the fire, was that relating to his own statements and his failure to deny Fambro's statement to the recorder at the time it was made. His silence at that time, however, cannot be treated as an admission, Fambro's statement being made in the progress of an investigation before a judicial officer; when silence, if not required, was at least justified as a matter of decorum. See *McElmurray* v. *Turner*, 86 *Ga.* 217; 3 Am. & Eng. Enc. of Law, p. 494; 1 Greenl. Ev. (14 ed.) §197, note 3. Besides, it appears that he did state to the recorder during the investigation that Fambro did the burning. His inconsistent statements as to where he was at the time the fire began,

though suspicious, are a very weak foundation for a verdict which consigns the accused to imprisonment for life.   It cannot be said that the evidence is inconsistent with every rational hypothesis but that of his guilt, and so strong as to exclude all reasonable doubt on that point.   Indeed, it is not so strong as the evidence in the case of *Williams* v. *The State*, 85 *Ga.* 535, which we held was insufficient to sustain a conviction of arson.   See also *Newman* v *The State*, 26 *Ga.* 633, 637, 638; *Orr* v. *The State*, 34 *Ga.* 342, 345; *Martin* v. *The State*, 38 *Ga.* 295; *Earp* v. *The State*, 50 *Ga.* 514; *King* v. *The State*, 86 *Ga.* 355.   We are satisfied that the ends of justice require a new trial, and the judgment of the court below is reversed.                    *Judgment reversed.*