## WILLIAMS v. THE STATE.

113  721
Case 2
j130  337

The evidence against the accused was entirely circumstantial, and, while it raised a suspicion of his guilt, was not sufficient, though given its strongest intendment as against him, to exclude every other reasonable hypothesis.   It was, therefore, error to refuse a new trial.

Submitted July 15, — Decided July 18, 1901.

Indictment for murder.   Before Judge Harris.   Carroll superior court.   June 7, 1901.

*Talbot Smith, S. J. Boykin,* and *Oscar Reese,* for plaintiff in error. *J. M. Terrell, attorney-general, T. A. Atkinson, solicitor-general,* and *S. Holderness,* contra.

SIMMONS, C. J.   The accused, Ike Williams, was convicted of the murder of Otis Word, and sentenced to be hanged.   He moved for a new trial, on the grounds that the verdict was contrary to law and the evidence.   The motion was overruled, and he excepted. The evidence showed that the accused was acquainted with the deceased, who was a boy not quite fourteen years of age; that on January 1st they were together in a store; that the boy purchased two silk handkerchiefs and a pocket-book, and had a small amount of money remaining; that these purchases were made in the presence of the accused; that just afterwards they were seen together on the street of the village.   The accused was shown to have had

some money also.   About nine o'clock a. m. he and the boy were seen crossing a bridge near the village, the accused tossing some dice in his hand.   This was the last time the boy was seen in life. The accused was next seen at the house of one Robertson, where he arrived at about eleven a. m.   The distance from the bridge to Robertson's was about one and a half miles.   The accused assisted Robertson in loading some wagons, left the house and went with Robertson for a short distance, and then walked through the fields to the house of his brother-in-law.   Next day the accused was at another house and had some blood on his sleeve.   When asked if he had been to a hog-killing, he replied that he had not, but that his nose had been bleeding.   A day or two thereafter he left at the house of a friend a pair of trousers which had some splotches on them.   Then he left his shirt at a woman's house to be washed, but there was no blood on that.   Some three weeks after the boy and the accused had been seen together, the boy's body was found in a pond at a distance of from a quarter to a half a mile from the bridge they had been seen crossing.   A deep gash had been made in the boy's neck, apparently with some sharp instrument. He had been dead for some time.   When the body was searched, no money was found upon it and none of the things the boy had purchased at the store on January 1st.   Two pocket-knives and an old cotton handkerchief were found in the pockets of his clothing. Before the finding of the body, the accused was arrested, had a committal trial, and was discharged.   Between this time and his final arrest, a witness asked him if he was not afraid of being arrested again, and the accused replied that he was not, that he had been in other things besides that, and "knowed" how to do when he got into things like that.   The witness then asked him why he did not leave the community, remarking that under similar circumstances he would do so.   The accused replied that that would put suspicion on him.   After the finding of the body, the accused was again arrested, and upon his person were found a small amount of money, some dice, "an old flour-sack handkerchief, dirty and bloody," and a pocket-book, the latter not shown to be that purchased by the deceased.   These were all of the incriminating facts shown by the evidence, and on them the jury based their verdict of guilty.

We have carefully read all of the evidence brought up in the record as having been produced on the trial in the court below, and

have reached the conclusion that this evidence was not sufficient to show the guilt of the accused under the law. The Penal Code, § 984, declares: "To warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." While the above-recited evidence raises a suspicion against the accused, it is not sufficient to exclude every other reasonable hypothesis save that of the guilt of the accused. The deceased evidently lost his life by the violence of some one, but there were opportunities, after he and the accused had crossed the bridge, for others to have committed the homicide. There was no proof whatever that the accused and the deceased were ever seen together after they left the bridge. The fact that there was blood upon the sleeve of the accused on the next day might, unexplained, have been sufficient to arouse a suspicion, but it was promptly explained by the accused, and there was no proof to contradict his explanation. Even if the spot upon his trousers was blood, this was not sufficient to connect him with the killing; and besides it was a disputed question among the witnesses as to whether it was a blood stain or not. The reply given by the accused to the suggestion that he leave the community was not sufficient to connect him with the crime, and all of the evidence, taken together, was not sufficient to do this. The rule of law laid down by our code, as above quoted, is a wise one. It is taken from the common law, and has been the rule in this country and in England for centuries. Under this rule, if the State relies upon circumstantial evidence, that evidence must be so strong as to exclude every other reasonable hypothesis save that of the guilt of the accused. It must be inconsistent with his innocence. This court has ruled on several occasions that, in cases involving life or liberty, this rule must not be relaxed. When a heinous crime has been committed in a community and the people are greatly shocked thereby, it is natural for them to catch at any little circumstance to throw suspicion upon some person and to conclude from this or that circumstance that he is the guilty party. The horror of the crime, and their desire, as good citizens, to see the guilty party punished and the law vindicated, frequently lead them to premature judgment which oftentimes follows them into the jury box, where, as jurymen, they not infrequently find persons guilty on bare suspicion alone. This is demonstrated by the records of

cases passed upon by this court, commencing with the earlier volumes of our reports and continuing almost to the last one. For a reference to some of these cases, see *Bell* v. *State,* 93 *Ga.* 557. Juries should guard themselves in this respect, and not find verdicts on mere suspicion. They should uphold the law as laid down in their own code, whatever may be their private views or prejudices.

From the reports in the public prints we know that the people of the county in which this trial was held have a grand example of a law-abiding citizen in their midst. Their own sheriff may have been of their opinion as to the guilt of this accused; yet when the trial judge, after refusing a new trial, granted a supersedeas in order that this writ of error might be sued out, the sheriff protected his prisoner at the hazard of his own life against an infuriated mob. He taught the mob that the law would shoot as well as hang. In our opinion, if other sheriffs in the State would exercise the same courage and fidelity to duty as did this noble man, many lynchings would be prevented and mobs grow much less frequent. All honor to this sheriff and his little posse!

*Judgment reversed. All the Justices concurring.*