## ADKINS *v.* THE STATE.

1. Where a conviction depends entirely upon circumstantial evidence, the evidence must be of such character as to exclude every other reasonable hypothesis save that of the guilt of the accused; and in this case the evidence fails to come up to this rule.
2. The court erred in refusing a new trial.

No. 3755.   OCTOBER 9, 1923.

Indictment for murder.   Before Judge Hardeman.   Washington superior court.   April 13, 1923.

*J. C. Newsome* and *Evans & Evans,* for plaintiff in error.

*George M. Napier attorney-general, Walter F. Grey, solicitor-general,* and *Seward M. Smith, asst. atty.-gen.,* contra.

HILL, J.   The grand jury of Washington County indicted J. B. Miller, Gainer Adkins, Ella Adkins, Sim Adkins, and John Henry Tarver for the crime of murder.   In the present case Gainer Adkins alone was on trial; and the jury returned a verdict of guilty, with a recommendation that he be imprisoned in the penitentiary for life, and he was sentenced accordingly.   The defendant made a motion for a new trial, on the usual general grounds, which was overruled, and he excepted.

The evidence in the case was purely circumstantial, and does not, in our opinion, come up to the rule which requires in such cases that the proved facts must not only be consistent with the hypothesis of guilt but must exclude every other reasonable hypothesis save that of the guilt of the accused.   Penal Code (1910), § 1010.   The evidence tends to show that on May 18, 1922, a young white woman, who was the rural route mail carrier from Davisboro, was foully murdered at a place on the public road, while she was alone in the Ford car in which she was conveying the mail, and that she was shot to death with a shotgun by a negro boy, who, either alone or with the aid of others, dragged her body from the car across

the road and about fifteen yards into the woods adjacent to the road, where it was found. The evidence discloses that the boy, who was twelve or thirteen years old, took the car, the front portion of which was spattered with blood, and drove it along the same road which the deceased had to travel, a distance of about eight miles, and came back to his father's house, the plaintiff in error here, and stated to him that he had had a dream that he would come into the possession of a Ford car, and that the dream had come true, and in answer to a question from his father the boy, a son of plaintiff in error, stated that a man had killed himself with the shotgun, which belonged to the plaintiff in error, and which, according to the statement of the latter, the boy had taken without his permission, and that he had been hunting with this man, who, before he killed himself, had given the car to him. Soon after the murder and the news of it had spread abroad, and within an hour thereafter, several men of the neighborhood came to the house of the plaintiff in error where they found the boy, Charlie Adkins, he having in the meantime changed his clothes, which were bloody, besides having blood on his face, and the boy was taken to the scene of the homicide. When found, the bloody car, which belonged to the murdered woman, was standing in the yard of the boy's father, the plaintiff in error; and a member of the searching party drove the car to the scene of the homicide. As they left the yard the plaintiff in error stood upon the running board of the car near the front, which was badly bespattered with blood, and went to the scene of the homicide.

The evidence relied on by the State to connect the plaintiff in error with the perpetration of the crime was substantially as follows: There were tracks leading from the home of the plaintiff in error, which was from a half to three fourths of a mile from the scene of the homicide, down to a branch which was in the edge of a field cultivated by the plaintiff in error and which was about a hundred yards from his house. These tracks were shown to be those of the plaintiff in error, and he was seen going from his house towards the branch on the morning of the homicide, which occurred about 9:30 a. m. The same tracks came back from the branch to the house; but there is no evidence of any tracks leading from the branch to the scene of the killing, although the tracks led in that general direction. In his statement the plaintiff in

error said that he went to the branch after lightwood, and denied that he went beyond the branch. There was evidence that there was one small spot on the overalls of the plaintiff in error, which a witness for the State, who examined it, testified was blood. It was also shown that the overalls which the plaintiff in error had on were clean as if they had not been worn before, indicating that they had been recently put on; but no other suit of the defendant was found. The bloody overalls which the young son of the plaintiff in error had on at the time of the killing were found in the small back room of the house of the plaintiff in error, behind a little bed which was shoved up to the wall, and the blood on the overalls was fresh. A silver quarter and other small change was lying near the bloody overalls of the thirteen-year-old boy. A witness for the State, who went to the house of the plaintiff in error, stated that he saw Charlie Adkins, the boy, after the homicide, hand a gun to the plaintiff in error, who carried it into his house. Witnesses who examined the gun found that one barrel of it had been recently discharged, and that the empty shell was still in the gun. Most of the other evidence for the State described the scene of the killing and of the discovery of the body of the young woman. One witness testified that she lived a short distance from the scene of the crime, and had gone down to the road to her mail-box in which the mail carrier had left some letters, and while she was there she heard the report of a gun. There was a little rise in the road between where this witness was standing and the car where the murder was committed. She could see a car and the head and shoulders only of a person at the car, but she could not say who it was, nor whether the person was a man or boy, nor whether he was white or black. One other circumstance is relied on by the State for a conviction. On the day previous to the homicide it had rained, and the swamp towards which the plaintiff in error had walked in the morning, and which was in the general direction of the place where the homicide occurred, was filled with mud and water; and when the plaintiff in error was apprehended, an hour or so after the murder, his overalls which he had on were perfectly clean and free from mud or water. There is no evidence of any tracks of the defendant or others having crossed the swamp, or that the plaintiff in error was any nearer to the scene of the killing than the branch and swamp to which his tracks led, which was from one half

to three fourth of a mile distant; but the contention of the State is that the plaintiff in error went through the swamp and after the killing changed his clothes, which were clean when the defendant was found; but the evidence, as already stated, does not disclose any other suit of the defendant which was wet or muddy.

The plaintiff in error in his statement denied knowing anything at all about the killing. He stated that the boy (Charlie Adkins, his son) had taken his gun without his knowledge or consent; that the boy had asked him earlier in the morning to let him go rabbit-hunting, and he had consented for him to go with his dog, and he was very much shocked when some one came and said that the automobile was the car of the " mail-riding woman " who had been murdered; that early in the morning, it being cool, he had gone down to the swamp and woods about a hundred yards from his house to get some lightwood to put on the fire, which he did get and bring back to the house and chopped it up and carried it in the house and put some of it on the fire. From a careful review of all the evidence we feel constained to hold that it is insufficient to connect the plaintiff in error with the crime, and to authorize a verdict of guilty. The evidence at most only tends to raise a suspicion of guilt of the plaintiff in error, and is not sufficient to support a conviction of the crime of murder for which he stands charged. See *Silvey* v. *State,* 111 *Ga.* 849 (36 S. E. 608); *Ballew* v. *State,* 99 *Ga.* 195 (24 S. E. 452). Where a conviction depends entirely upon circumstantial evidence, as in this case, the evidence must be of such character as to exclue every other reasonable hypothesis save that of the guilt of the accused; and in this case the evidence does not come up to this rule. Penal Code (1910), § 1010. And see *Patton* v. *State,* 117 *Ga.* 230, 237 (43 S. E. 533), where the court cited the following cases: *Wells* v. *State,* 97 *Ga.* 210 (4) (22 S. E. 958); *King* v. *State,* 84 *Ga.* 524 (10 S. E. 721); *Cummings* v. *State,* 110 *Ga.* 293 (35 S. E. 117); *Johnson* v. *State,* 61 *Ga.* 305 (5); *McDaniel* v. *State,* 53 *Ga.* 253; *Shannon* v. *State,* 57 *Ga.* 482; *Laws* v. *State,* 114 *Ga.* 10 (39 S. E. 883); *Johnson* v. *State,* 73 *Ga.* 107.

The court erred in refusing a new trial.

*Judgment reversed. All the Justices concur.*