## ADAMS *v.* THE STATE.

PER CURIAM. The determination of all the questions raised in the record depends upon a consideration of the evidence, and the movant has not briefed the evidence in accordance with the statute relating thereto (Civil Code of 1910, § 6093). There was not even an attempt made to abbreviate the evidence, and this court can not, under the law, consider the evidence thus brought up as a compliance with the statute requiring a brief of the evidence to be a condensed and succinct brief of the material portions of the oral testimony; and consequently the judgment of the trial court refusing a new trial must be affirmed. *Smith* v. *Ray*, 93 *Ga.* 253 (18 S. E. 525); *Price* v. *High Co.*, 108 *Ga.* 145 (33 S. E. 956).

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*

No. 8722. JULY 13, 1932.

*G. W. Huling,* for plaintiff in error.

*George M. Napier, attorney-general, A. J. Perryman, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J., dissenting. I am not unfamiliar with the provisions of Code § 6093. I do not think the circumstances are such that it is applicable to the case at bar. The State's counsel has not raised any question as to the sufficiency of the brief of evidence. I shall not, in a capital case, take advantage of those decisions which construe the code section as a convenience for the court, or as a measure designed to lighten the labors of the court. In my opinion the statement of the evidence, while appearing in the form of questions and answers, is just as brief and far more easily understood than it is likely to have been had it been reduced to narrative form, which the statute says "may" be done. In my opinion, for the reasons hereafter stated, there has been a miscarriage of justice, and in such an instance my conscience will not permit me to "stick in the bark" in the observance of a rule of procedure which has not been uniformly adhered to in the past.

1. The evidence not demanding the inference that the death of the deceased was caused by the use of a weapon likely to produce death, or any instrumentality from the use of which an intention to kill may be presumed, the jury should have been instructed that if they found from the evidence that the homicide was committed by means or in a manner which did not evidence an intention on

the part of the accused to kill the deceased, they might consider whether or not he was guilty of involuntary manslaughter, but that he would not be guilty of the offense of murder.

2. The evidence is entirely circumstantial, and is insufficient to establish the guilt of the accused to the exclusion of any other reasonable hypothesis except that of his guilt of the crime.

3. The court erred in overruling the motion for a new trial.

The defendant was indicted for and convicted of the offense of murder. In the indictment he was charged with the murder of his wife, "by then and there striking and beating her with an instrument and weapon, the name and description of which is to the grand jurors unknown, . . did then and there inflict upon her, the said Mae Adams, a mortal wound, of which she, the said Mae Adams, did then and there die." Upon his conviction the defendant moved for a new trial, and the exception presented by the bill of exceptions is to the judgment of the court overruling this motion for a new trial.

1. Aside from the usual general grounds of the motion, error is assigned in an amendment to the motion, alleging that the court erred in failing to charge the jury upon the law of involuntary manslaughter, because the evidence produced by the State tended to show the instrument or weapon used by defendant, if any at all, was not likely to produce death, nor one from the use of which death would be a natural consequence, and that the jury should have been given proper instructions which would have enabled them to pass upon the question of any intention of defendant to kill deceased. There is no exception to the charge of the court predicated upon the complaint that the instructions actually delivered to the jury contained error. No requests for instructions seem to have been presented. In these circumstances, the merit of the special ground of the motion for a new trial depends upon whether the evidence raised such an issue in the case as that it became the duty of the court to instruct the jury with reference to the law of involuntary manslaughter even in the absence of a special request. Courts are required, without request, to give to the jury the law pertaining to issues which may be properly raised upon the pleadings and the evidence. Generally the accusation of the State and the defendant's plea of not guilty constitute the only pleadings in a criminal case. In the indictment in this case the only description

of the instrumentality by which the alleged murder was committed is "unknown to the grand jurors." The manner in which it was used is likewise unknown. Since there was no demurrer, the State was at liberty to prove any kind of weapon, or no weapon, and any manner in which death resulted, provided the death was caused by the named defendant. The testimony did not prove that any weapon was used which can be denominated as a weapon likely to produce death. And yet the law makes a wide distinction between the use of a weapon likely to produce death, where a homicide ensues, and a killing which is the consequence of some instrumentality from which death does not naturally result. From the use of a weapon which in its consequences naturally tends to produce death, the intention to kill may be presumed, but no such implication arises when a homicide results from the use of means from which death does not naturally follow. In that event, an intention to kill must be shown. The distinction to which I refer could be greatly elaborated so as to present instances in which juries might unwittingly work grave injustices in their ignorance of these rules of law. The evidence in this case seems to show that if the accused assaulted his wife with a weapon, it was certainly not such a weapon the use of which in its natural consequences would produce death. The physician who was introduced by the State, and who performed the autopsy upon the body of the deceased, testified that the death could not have been caused by a blow from the pistol which some of the witnesses swore was in the hands of the accused. This physician stated: "It could have been caused from a direct blow on the spine, or it could have been caused from the hand or some broad instrument." On cross-examination he testified that the concussion could also have been caused by some one jumping a distance and landing on the feet, and that it could have been caused by somebody abruptly sitting down and jarring the spine—any force that would cause a hard force on the spine. Also that the concussion could have been caused by a person sliding down a slant of some thirty or forty degrees and landing abruptly on their seat. The physician also testified that the concussion which he found by the autopsy in his opinion would have to have been caused by a soft instrument of some sort, that it would have had to be covered or flat, otherwise he would have seen some scar there or contusion. Q. "Could that bruise have been caused by an instru-

ment, say for instance a pistol, or any instrument small enough to be wielded by the hand, and not cause a blood-clot or an abrasion of the skin?" A. "I don't think so." Q. "Doctor, if a person was running at night and abruptly stepped into a ditch, could that jar be sufficient to cause or produce this injury?" A. "Yes, sir." All the evidence in this case is circumstantial, for no witness saw any blow given at the time of the alleged homicide, by any one. In these circumstances, I am of the opinion that the issue was necessarily raised by the testimony for the State itself, as to what kind of instrument the defendant used, if any, in wounding his wife, and the method of its use, and whether in the employment of whatever means the defendant may have used, if he used any, there was an intention on his part to kill, or merely beat her for her infidelity, as the testimony shows he had several times previously done.

The case of *Bell* v. *State*, 130 *Ga.* 865 (61 S. E. 996), was one in which the deceased was found in a gully with dirt and brush over him. At this place and at a different place, where the deceased was supposed to have been killed, tracks made with a wooden leg were found. The defendant was the only person in the community with a wooden leg. There were three wounds on the deceased—one above the eye, one on the right cheek, and the other under the right ear. The State introduced several witnesses who detailed statements made to them by the defendant. One of them testified: "John Bell said in the presence of me that he killed this boy in self-defense; that he came up on him and his wife; said he told him, 'Oh, yes; I have been laying for you, and now I have catched you.' He said this boy jumped up then and threw a rock at him and throwed his hand back on his hip-pocket, and he thought this boy had a pistol in his pocket, and he run up on him and hit him, afraid that the boy would shoot him." Another witness testified: "He said he found him with his wife," etc. Another witness testified: "He said the reason he hit him he came up by Dave Huff's and heard them talking; that he was trying to seduce his wife, and he finally caught them in the act of seduction or sexual intercourse. He said he walked up and his wife walked off, and George told him 'If you come any closer I will kill you,' and that he hit him with a stick, this way. . . He said that when he went down there George Bennie picked up a rock and threw at him, and said, 'If you come on me I will kill you;' he didn't say

whether he thought he was drawing a pistol, but said he threw his hand up on his hip, and that he was close enough to strike him, and said he struck him." Another witness testified: "He said he found this negro there with his wife; . . he said the boy threw a rock at him," etc. The jury found the defendant guilty of murder, and in the unanimous opinion of this court it was held: "If this testimony was such as would authorize the jury to find the defendant guilty of the offense of voluntary manslaughter, it was the duty of the court to charge the law upon this subject, and his failure to do so would be error requiring a new trial, whether or not any request to so charge was made. *Ray* v. *State,* 127 *Ga.* 52 (55 S. E. 1046); *Joiner* v. *State,* 129 *Ga.* 295 (58 S. E. 859); *Dennis* v. *State,* 93 *Ga.* 303 (20 S. E. 315). The testimony of the State's witnesses detailed statements made by the defendant, wherein he undertook to give reasons for killing the deceased, to the effect that the defendant caught the deceased in a compromising position with his wife, and that a short time after he so found them the deceased threw a rock at the defendant." The several witnesses differed somewhat in their statements. "All of the witnesses agreed that the defendant stated that he found the deceased in a compromising position with his wife, and that the deceased threw a rock at him. If the deceased threw a rock at the defendant, and thus attempted, without justification, to commit a serious personal injury on the defendant, or if there were other equivalent circumstances to justify the excitement of passion and to exclude all idea of deliberation or malice, either express or implied, and if the killing was the result of that sudden, violent impulse of passion supposed to be irresistible, the defendant would be guilty of voluntary manslaughter, unless there should have been an interval between the assault, or provocation given, and the homicide—of which the jury are the judges—sufficient for the voice of reason and humanity to be heard. . . There was evidence from which, if believed by the jury, they might have found that the truth of the matter was that the deceased threw a rock at the defendant, and thus, without provocation, attempted to commit a serious personal injury on him, and that he killed the deceased because of the sudden, violent impulse of passion engendered thereby. There was also testimony from which, if believed by the jury, they might have found that the truth of the matter was that immediately before the defendant

killed the deceased, he caught the deceased in the act of sexual intercourse with his wife, . . and that the killing was the result of that sudden, violent impulse of passion engendered by such circumstances. Both of these theories, on either of which the jury, if they believed the testimony on which they were based, would have been authorized to find the defendant guilty of voluntary manslaughter, should have been given in charge by the court. Even if the defendant makes a statement which, if true, would justify the killing, and he contends before the jury that he was guilty of no offense, and the State contends before the jury that the defendant is guilty of murder, and introduces evidence from which it could be inferred that he was guilty of murder, if the testimony in the case is such as to authorize the conclusion that the truth of the matter is that the defendant is guilty of voluntary manslaughter, a charge upon this subject should be given, as the jury should be permitted to find what is the truth of the matter and find the defendant guilty of an offense less than murder, if they believe the evidence so authorizes and that such was the offense really committed, regardless of the contentions of the parties."

In *Kelly* v. *State,* 145 *Ga.* 210 (88 S. E. 822), Mr. Justice Atkinson, delivering the opinion of the court, said: "3. The 8th ground of the motion for new trial, properly construed, complains of the omission of the judge, without request, to charge on the law of involuntary manslaughter. There was evidence to the effect that the deceased, on the night in question, was lying under a tree by the roadside with his face towards the ground, and while in that position the accused approached unobserved and 'struck him five times on the back of his head and his shoulder . . with a limb of a tree.' While striking the deceased the accused said, with an oath: 'I will kill you.' The deceased was rendered unconscious. After striking him as indicated, the accused threw down the stick, kicked the deceased aside from his coat on which he was lying, picked up the coat, and went off along the street. Another witness testified that he was the driver of the ambulance that went after the injured man, whom he picked up on the side of the road. The witness also testified: 'He was unconscious . . a stick beside him in that condition [several pieces of stick being exhibited]. I can not tell where he was lying with reference to Egense. It was right close to him; as far as from me to you.' The doctor testified that

it was a little after midnight when he saw the patient, and 'there was a contusion on the back of the skull and back of his neck. He was unconscious, and he twisted and moved about in bed. . . His injury was a desperate one. I had him taken to the operating room, and made an incision and found that a part of the skull had been driven into his brain, as if you would take an egg on a table and crush it. He did not survive; what marvelled me was that he lived so long. The substance of the brain was pulpified; it was oozing out.' Another witness testified that he had 'put . . together' the stick identified by the ambulance-driver, and that it was 58 inches long and 8-1/2 or 9 inches in circumference, and on the stick was some hair which he believed was human hair. The pieces of stick as identified were also introduced in evidence. The foregoing is substantially all of the evidence as to the circumstances of the killing. Under the evidence, if the accused was the person who did the killing, it was for the jury to say whether the implement with which the blow was inflicted was a weapon likely to produce death when employed in the manner in which it was shown to have been used; and while the jury would have been authorized to find that it was such a weapon, the evidence was not of such character as to demand a finding that the implement was a weapon likely to produce death and that the blow was struck with the intent to kill. The evidence would have authorized a verdict of involuntary manslaughter in the commission of an unlawful act. *Dorsey* v. *State*, 126 *Ga.* 633 (55 S. E. 479); *Joiner* v. *State*, 129 *Ga.* 295 (58 S. E. 859); *Anderson* v. *State*, 130 *Ga.* 364 (60 S. E. 863). It was erroneous, therefore, to omit to charge the law of involuntary manslaughter."

In *Dorsey* v. *State*, supra, where the complaint was based upon the failure of the judge to instruct the jury upon the subject of involuntary manslaughter, and the weapon used was before the jury, Mr. Justice Cobb, delivering the opinion of the court, said: "The jury should have been fully instructed as to their duties in reference to this question; and the law applicable to any phase of the case resulting from their finding as to the character of the weapon should have been embraced in the instructions of the judge. If they found that the weapon used was one likely to produce death, in the manner in which it was used, then, if the accused was not justified under some rule of law in using the weapon in the

manner and at the time at which he used it, he would be guilty of murder or voluntary manslaughter, according to whether they believed that the blow was struck from malice, or as a result of passion not brought about by words alone. If the jury should find that the weapon was one which would not ordinarily produce death, and therefore was not a deadly weapon, and the circumstances demonstrated to the satisfaction of the jury that there was no intention to kill, then, even though the blow was not justified, the accused would be guilty only of the offense of involuntary manslaughter; the grade of which he would be convicted to be determined by whether the blow was inflicted as a result of an unlawful act, or whether, under the circumstances, he was justified in striking a blow, but in administering it did not use due care and circumspection. Under one view of the evidence the law of involuntary manslaughter in the commission of an unlawful act was certainly involved. . . The failure of the judge to instruct the jury upon the higher grade of involuntary manslaughter was such an error as constrains us to reverse the judgment refusing a new trial. See *Taylor* v. *State,* 108 *Ga.* 389 [34 S. E. 2]; *Farmer* v. *State,* 112 *Ga.* 80 [37 S. E. 120]; *Chapman* v. *State,* 120 *Ga.* 855 [48 S. E. 355]; *Jordan* v. *State,* 124 *Ga.* 780 [53 S. E. 331]."

In the *Taylor* case, supra, there was evidence that the weapon used was a piece of wood, and it caused the death; and it was held that the conclusion did not necessarily result that it was a weapon likely to produce death, or that the use of it established beyond controversy an actual intention to kill. In *Farmer* v. *State,* supra, a bottle was used and a blow therefrom did produce death, but inasmuch as the evidence did not show that the bottle used would ordinarily have produced death, a new trial was granted for the failure of the judge to charge the law relating to the subject of involuntary manslaughter in the commission of an unlawful act, although no request for instruction upon this subject was made. In *Joiner* v. *State,* 129 *Ga.* 295 (supra), Mr. Justice Beck, delivering the opinion of the court, held that "When in the trial of a person indicted for murder there is evidence from which the jury can find that the homicide resulted from a blow inflicted with an instrument which would not ordinarily produce death, . . it is error requiring the granting of a new trial for the judge to fail to charge the law relating to the subject of involuntary manslaughter in the

commission of an unlawful act," citing *Farmer* v. *State, Jordan* v. *State,* and *Dorsey* v. *State,* supra. Many cases might be referred to in addition to the cases cited, supporting the well-settled rule so clearly stated by Judge Warner in *Crawford* v. *State,* 12 *Ga.* 142 : "When a defendant is put upon his trial for murder, and there is any doubt as to the grade of homicide of which he is guilty, it is the duty of the court clearly and distinctly to instruct the jury as to the law defining the several grades of homicide, as recognized by the Penal Code, and then leave it to the jury to find from the evidence of what particular grade he is guilty."

2. I have carefully read all of the evidence in the record which was produced in the trial in the court below, and have reached the conclusion that this evidence was not sufficient to show the guilt of the accused under the law. I have already referred to uncontradicted testimony showing that the death of the deceased might have been caused in several different ways with which the accused would have had no connection. Section 1010 of the Penal Code of 1910 declares when circumstantial evidence is sufficient to warrant a conviction. "To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." In *Williams* v. *State,* 113 *Ga.* 721 (39 S. E. 487), where there were perhaps more facts to arouse suspicion than in the case at bar, Mr. Chief Justice Simmons, delivering the opinion of the court, said: "The rule of law laid down by our code, as above quoted, is a wise one. It is taken from the common law, and has been the rule in this country and in England for centuries. Under this rule, if the State relies upon circumstantial evidence, that evidence must be so strong as to exclude every other reasonable hypothesis save that of the guilt of the accused. It must be inconsistent with his innocence. This court has ruled on several occasions that, in cases involving life or liberty, this rule must not be relaxed. When a heinous crime has been committed in a community and the people are greatly shocked thereby, it is natural for them to catch at any little circumstance to throw suspicion upon some person and conclude from this or that circumstance that he is the guilty party. . . This is demonstrated by the records of cases passed upon by this court, commencing with the earlier volumes of our reports and continuing almost

to the last one. For a reference to some of these cases, see *Bell* v. *State*, 93 *Ga*. 557 [19 S. E. 244]." Among other cases may be cited *Newman* v. *State*, 26 *Ga*. 633, 637-38, where Judge McDonald, speaking for the court, comprehensively stated both aspects in which the rule should be considered. The language of Judge McDonald in summing up the case has frequently been quoted or applied in all courts. "Jurors are generally too reluctant to convict on circumstantial evidence. While it is true that a man ought not to be punished for an offense of which he is guiltless, the jury ought not to pronounce the accused innocent for the want of positive evidence of his guilt. Circumstances satisfactorily proven, which point to his guilt, *and which are irreconcilable with the hypothesis of his innocence,* . . ought to satisfy the conscience of every juror, and justify him before that forum for rendering a verdict according to their almost unerring indications. Any other rule would expose society to the ravages of the most depraved men. The most atrocious crimes are contrived in secret and perpetrated, generally, under circumstances which preclude the adduction of positive proof of the guilt of the persons who commit them. But it must be remembered, that while this is the case, circumstances which would authorize a bare *conjecture* of guilt are not sufficient to warrant a conviction."

In *Orr* v. *State*, 34 *Ga*. 342, a new trial was granted because the verdict was contrary to evidence. "To convict upon circumstantial evidence, the proof must exclude every reasonable hypothesis but that of guilt." In *Orr's* case, as in the case now before us, the testimony was entirely circumstantial, and the court, in its opinion, after quoting from 1 Stark. Ev. 575, and 1 Greenl. Ev. 13, quotes the following from 3 Greenl. Ev. 29 : "For it is not enough that the evidence *goes to show* guilt; it must be inconsistent with the reasonable supposition of his innocence." "Where the pressure of the case is not upon the corpus delicti but upon the question who is the guilty party, and *all the evidence inculpating the accused is circumstantial,* it is error for the court to instruct the jury that the case is not founded entirely upon circumstantial testimony, but that there is both positive and circumstantial evidence." *Simmons* v. *State*, 85 *Ga*. 224, 228 (11 S. E. 555), citing *Orr* v. *State*, supra, and *Martin* v. *State*, 38 *Ga*. 293. In the case at bar the circumstances leave in doubt both the corpus delicti (for the deceased

may have been the author of her own injury) and also the question of the intention of the accused in inflicting the blow upon his wife, even if the jury should be satisfied that the accused wounded her. As said by Mr. Justice Gilbert in *Johnson* v. *State*, 151 *Ga.* 21, 27: "The evidence is insufficient to support a verdict of guilty. . . While sufficient to raise a grave suspicion, it fails utterly to rise to that dignity required by law in a case of circumstantial evidence; that is, that it must remove every reasonable hypothesis save that of the guilt of the accused. In our opinion the verdict is not authorized by the evidence."