PARKS, *alias* ALEXANDER, *v.* THE STATE.

No. 15706.  FEBRUARY 7, 1947.  REHEARING DENIED MARCH 20, 1947.

*Mack G. Hicks* and *Dudley B. Magruder,* for plaintiff in error.
*Eugene Cook, Attorney-General, H. L. Lanham, E. J. Clower, Solicitors-General, Chastine Parker, Horace T. Clary, Vaughn Terrell,* and *Henry N. Payton, Assistant Attorney-General,* contra.

HEAD, Justice. (After stating the foregoing facts.) ■ In this case the State relied solely upon circumstantial evidence to establish the guilt of the defendant. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Code, § 38-109. The proved facts as shown from the record in this case are sufficient to establish a *suspicion* of the guilt of the accused, but they are wholly insufficient to establish his guilt beyond a reasonable doubt, and they do not exclude every other reasonable hypothesis save his guilt.

The deceased unquestionably lost her life by violence and brutality of someone, but the entire record is silent as to any possible motive the defendant may have had if he committed the crime. The State's evidence eliminates any theory of robbery or criminal assault as a motive for the crime.

The evidence shows that the deceased intended to meet the mail carrier, and that she expected to receive a C. O. D. package from him. That she met the mail carrier and received such package, may be inferred from the testimony of Mrs. Bohannon, who stated that she saw the package in the residence of the deceased about the time concern over her continued absence was first felt by the witness and the husband of the deceased. There is nothing in the record to show at what time the deceased received such package, if she did in fact receive it, other than the testimony that the mailman usually passed about 1:30 o'clock. The evidence does not indicate any reason why the deceased, after receiving the C. O. D. package and taking it to her home, should have been in the neighborhood where she was later killed, and why she did not go to the home of the neighbor, Mrs. Bohannon, as she was expected to do.

There is nothing in the evidence to show at what time, or even approximately what time, the deceased met her death. While the defendant admitted that he was in the vicinity where the crime was committed, visiting relatives, there is nothing to disprove his statement that he left the neighborhood shortly after the 12:30 news broadcast, and that he got a ride on a truck with another negro. His movements from that point on, as set forth in his statement, are not in conflict with, or contradicted by, any testimony for the State. The defendant might well have passed at

or near the scene of the crime before Mrs. Atchley met the mail-man, or he might have passed the scene of the crime during that time in which Mrs. Atchley returned home, as she may have done, according to the testimony that the C. O. D. package expected by her was later found at her home.

The evidence of the witness for the State that he made a plaster-of-Paris cast from one of the tracks (which the State contends was a track of the defendant), before placing therein the shoe worn by the defendant, is in conflict with other testimony that the shoe was fitted into the track before the cast was made. Should we assume that the evidence established beyond all question that the tracks found in the public road (300 yards from the place where the body of the deceased was found) were the tracks of the defendant, this would not be sufficient to connect him with the crime. There is no competent or sufficient evidence to establish that the tracks thought to be those of the deceased, at or near the same point, were in fact her tracks. Should we assume that this fact was established by the evidence, there is nothing to show that the tracks were made at the same time. Evidence tending to indicate that the tracks alleged to be those of the defendant and the tracks alleged to be those of the deceased were made by both persons while running, would not establish that the tracks were made at the same time.

The evidence of the expert from the F. B. I. is wholly inconclusive. A witness for the State testified that the clothes of the defendant were thrown on the back seat of the car by the officer who later transmitted them to the expert for the F. B. I., and that all types of persons had ridden in the car of such officer. The hair on the clothing of the deceased, said to resemble a negro hair, might well have come from the person of Tom or Eula Parks, negroes, who discovered the body of the deceased.

There is nothing in the evidence to disprove the defendant's statements as to blood on his clothing. The testimony of the expert for the F. B. I., that the blood on the clothing of the defendant was not at a place where it would normally be if such blood came from the body of the defendant as stated by him, is not in in conflict with the defendant's statement made to the officers. The defendant told the officers that when he bled, he wiped the blood on anything he found to wipe it on. There is nothing in

the record to show that the defendant did not have the condition testified by him, or to disprove his statement in explanation of the blood on his clothing.

Since no clothes worn by the defendant were connected by the State's evidence with the crime charged, a mistaken statement by the defendant at the time of his arrest, or an untruthful representation (which could have been made to conceal the defendant's condition as later revealed by him), will not supply that which is totally lacking—evidence of the defendant's guilt. The defendant's statement that he did not have a knife at the time he was arrested is not proved to be untrue, and his subsequent statement that he had a knife and lost it does not contradict or conflict with his previous statement. Whatever suspicion may attach to the defendant, by reason of the alleged contradictory statements, is not sufficient to meet the requirement of law, that the defendant's guilt must be established by competent evidence.

In discussing the rule on circumstantial evidence as stated in the Code, § 38-109, this court in *Williams* v. *State,* 113 *Ga.* 723 (39 S. E. 487), stated: "The rule of law laid down by our Code, as above quoted, is a wise one. It is taken from the common law, and has been the rule in this country and in England for centuries. Under this rule, if the State relies upon circumstantial evidence, that evidence must be so strong as to exclude every other reasonable hypothesis save that of the guilt of the accused. It must be inconsistent with his innocence. This court has ruled on several occasions that, in cases involving life or liberty, this rule must not be relaxed. When a heinous crime has been committed in a community and the people are greatly shocked thereby, it is natural for them to catch at any little circumstance to throw suspicion upon some person and to conclude from this or that circumstance that he is the guilty party. The horror of the crime, and their desire, as good citizens, to see the guilty party punished and the law vindicated, frequently lead them to premature judgment which oftentimes follows them into the jury box, where, as jurymen, they not infrequently find persons guilty on bare suspicion alone. This is demonstrated by the records of cases passed upon by this court, commencing with the earlier volumes of our reports and continuing almost to the last one." The above language from *Williams* v. *State,* supra, is particularly in point here.

A horrible crime has been committed, and circumstances establish a suspicion that the defendant may be guilty.

In *Graham* v. *State*, 183 *Ga.* 886 (189 S. E. 910), Chief Justice Russell quoted with approval language from Chief Justice Warner in *Earp* v. *State*, 50 *Ga.* 513, as follows: "The law does not allow anyone to be convicted of any offense merely on a *suspicion* of their guilt. It would be a just reproach to the judicial tribunals of the State, and to the administration of the laws thereof, to allow a conviction to stand on the evidence contained in the record before us." See also *Martin* v. *State*, 38 *Ga.* 295; *King* v. *State*, 86 *Ga.* 355 (12 S. E. 943); *Bell* v. *State*, 93 *Ga.* 557 (19 S. E. 244); *Cummings* v. *State*, 110 *Ga.* 293 (35 S. E. 117); *Laws* v. *State*, 114 *Ga.* 12 (39 S. E. 883); *Sikes* v. *State*, 120 *Ga.* 494 (48 S. E. 153); *Young* v. *State*, 121 *Ga.* 334 (49 S. E. 256); *Gresham* v. *State*, 150 *Ga.* 668 (104 S. E. 629); *Adkins* v. *State*, 156 *Ga.* 586 (119 S. E. 612); *Reynolds* v. *State*, 170 *Ga.* 810 (154 S. E. 229); *Cornwell* v. *State*, 179 *Ga.* 668 (177 S. E. 235).

Under the requirements of the law applicable to this case, it was error to overrule the general grounds of the motion for new trial.

The special grounds of the amended motion for new trial, 2 to 7, inclusive, require no further elaboration.

*Judgment reversed. All the Justices concur, except Jenkins, C. J., and Bell, and Candler, JJ., who dissent.*